[No. 19289.    Department Two.—February 9, 1894.]

EUGENE FRANDZEN, RESPONDENT, *v.* THE COUNTY OF SAN DIEGO, APPELLANT.

COUNTY PRINTING—GREAT REGISTER—AUTHORITY OF COUNTY CLERK— POWER OF SUPERVISORS.—A county clerk had no authority as the law stood in 1892, to bind the county by his contract to print the Great Register for the county; but the authority to provide printed copies of the Great Register was devolved, by section 34 of the County Government Act of 1891, upon the board of supervisors, who are the chief legislative and executive authority of the county.

ID.—STATUTORY CONSTRUCTION—EFFECT OF SPECIFIC PROVISIONS.—Where there are in an act specific provisions relating to a particular subject, they must govern in respect to that subject, as against general provisions in other parts of the statute, although the latter, standing alone, would be broad enough to include the subject to which the more particular provisions relate.

Appeal from a judgment of the Superior Court of San Diego County.

The facts are stated in the opinion.

*M. L. Ward,* for Appellant.

*V. E. Shaw,* and *C. F. Holland,* for Respondent.

Haynes, C.—This is an appeal from the judgment upon the judgment-roll, and the only question presented by the record is whether the county clerk had authority, as the law stood in 1892, to bind the county by his contract with the plaintiff to print the great register for that county.

In July, 1892, the board of supervisors fixed the price for printing the great register for that year at fifteen cents per name for the first five hundred copies, and seventy-five cents for each additional copy. On August 26, 1892, W. M. Gassaway, then county clerk, contracted with the plaintiff to print the register at the prices fixed by the board. On September 26th, and before any of the copy had been furnished the plaintiff, Gassaway was superseded as such clerk by C. W. Thompson, who refused to permit the plaintiff to print the register, and employed other parties to do the work; and this action is to recover damages from the county for the breach of said contract. The cause was tried by the court, and resulted in findings and judgment for the plaintiff. The question to be decided is raised by the demurrer to the complaint, and upon the findings.

The opinion of the learned judge who tried the cause is printed in respondent's brief (and which constitutes the principal part of it), and the conclusion reached is based upon his construction of section 1115 of the Political Code, and of subdivision 23 of section 25 of the County Government Act (Laws 1891, p. 305), and section 34 of the same act, page 309.

By section 236 of the Act of 1891, page 422, all acts and parts of acts inconsistent with it are repealed.

By section 1115 of the Political Code it is provided that "within fifteen days after making such lists (of voters), the clerk must have printed a sufficient number of copies thereof," etc., and section 1116 directs the clerk to distribute them.

These sections are in that part of the Political Code which provides for the government of the state, and the registration of electors. Section 1115, as well as other sections of the chapter, show that the board of supervisors have a general control over the matter, and may order new registrations, or, if a sufficient number of former registers are on hand, may direct the clerk "to cancel all names thereon required to be canceled," and to prepare a supplement of additional names; that assistants may be employed by the clerk, for such times and at such compensation as shall be fixed by the board, which shall be paid out of the county treasury; but no other expense is provided for by this chapter of the code.

The county clerk is the clerk of the board, and by the code is specially charged with the duty of preparing the great register, and, having performed that duty, is very appropriately charged by the statute with the printing of it; but this does not necessarily imply that he has the power to contract on behalf of the county for the expense of printing. All these statutes should be construed in the light of the general scheme of county government created by the act—not that a positive provision clearly expressed should be nullified because it is not in our opinion in consonance with the general frame of the act, but, where a provision is not clear, it should be read in the light of the whole act and of its purposes, and the whole brought into harmony and consistency, if that can be done without violence to its provisions. It is much easier for a legislator to conceive a harmonious scheme of county government than it is to frame a bill for that purpose that shall be clearly consistent in all its provisions.

The board of supervisors are the chief legislative and

executive authority of the county. They have not only the powers expressly given, but such powers also as are necessary to the discharge of duties imposed by law. Unless, therefore, the county clerk is clearly authorized to make a contract on behalf of the county, so as to charge it, not only with the duty of performing it, but with damages for its breach, this judgment cannot be sustained.

Section 34 of the County Government Act, Laws 1891, page 309, is as follows: "The board must provide printed copies of the great register, poll lists, poll books, blank returns and certificates, proclamations of elections, and other appropriate and necessary appliances for holding all elections in the county, and allow reasonable charges therefor, and for the transmission and return of the same to the proper officers."

This is the only section in the act which in terms refers to the great register. Whether such work as the great register can be properly classed as "job printing," as used in subdivision 23 of section 25 of the same act, is not material. It is clear that it is not necessary to "fix the price" of printing the great register "annually," as our elections are biennial, and the statute does not require the great register to be printed at every election, though at least a supplement may be necessary at each election. This subdivision does not, in express terms, require bids for job printing and advertising, though after requiring the board to annually fix the price at which the county shall be supplied with job printing, blank books, and advertising, and after stating that "each county officer shall procure such blank books, job printing, and advertising, at a price *no greater* than is so fixed, and certify the bills therefor to the board of supervisors," it is immediately added: "And in all cases bidders shall estimate by ems or squares for each character or class of work to be done; and no greater price shall be charged for similar work when done by authority of law, whether said work is done for the city, city and county, or for private individuals."

It is not necessary to hazard a guess at the meaning of the above provisions. There is nothing in them which clearly or necessarily includes the printing of the great register, whilst it could not come within the direction to bidders to "estimate by ems or squares." There are, however, many things to which it can apply aside from the great register, and hence there is no conflict between that subdivision and section 34 above quoted. The learned judge whose opinion we have referred to thought it necessary, in order to harmonize these provisions, to interpolate the word "for" between the words "provide" and "printed" in section 34; but that suggestion concedes that as section 34 appears in the statutes the board is required to procure the great register to be printed; and if that is the true construction of the section, and we think it is, the controversy is ended.

Counsel for respondent cites *Journal Pub. Co.* v. *Whitney*, 97 Cal. 283, but there is no conflict between our conclusion here and that case. That case involved the printing of the delinquent tax list, which was there held to be county advertising, and so within the provisions of subdivision 23.

*Maxwell* v. *Board of Supervisors*, 32 Pac. Rep. 443 (not reported in California Reports), was *mandamus* to compel the board to advertise for bids for county advertising. The writ was refused on the authority of *Journal Pub. Co.* v. *Whitney*, 97 Cal. 283.

As suggested by counsel for appellant, if the legislature intended the printing of the Great Register to be included and provided for in subdivision 23 of section 25, there was no occasion for again alluding to it or providing for it in section 34. Besides, "where there are, in an act, specific provisions relating to a particular subject, they must govern, in respect to that subject, as against general provisions in other parts of the statute, although the latter, standing alone, would be broad enough to include the subject to which the more par-

ticular provisions relate." (Endlich on Interpretation of Statutes, p. 288.)

We think the county clerk had no power to make the contract in question, and that the judgment should be reversed.

SEARLS, C., and VANCLIEF, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is reversed.

DE HAVEN, J., McFARLAND, J., FITZGERALD, J.