[L. A. Nos. 1156, 1202.  In Bank.—December 4, 1902.]

THE PEOPLE ex rel. BENJAMIN F. BLEDSOE, Respondent, v. JOHN L. CAMPBELL, Defendant, and C. C. BENNETT, Intervener,—Appellants.

SUPERIOR JUDGE—TERM OF OFFICE—HOLDING OVER—CONSTITUTIONAL LAW.—Section 6 of article X of the constitution, fixing the term of office of a superior judge at six years, terminates the office at the

end of that period, and does not contemplate a holding over until his successor is elected and qualified. The legislature cannot extend the term, and section 879 of the Political Code cannot have that effect.

ID.—QUO WARRANTO — RELATOR — INTERVENTION — CONTEST BETWEEN CLAIMANTS.—The term of office of the incumbent having expired, *quo warranto* lies in the name of the people, upon relation of one claiming to have been elected as his successor, to remove him from an unlawful holding over. It cannot concern the defendant whether the relator is entitled to the office, as against an intervening claimant thereof, or whether the court in the contest between the relator and the other claimant erred in its decision in favor of the relator.

ID.—APPEAL BY INTERVENER—EXCEPTIONS TAKEN BY RELATOR.—Upon appeal by the intervener from the judgment upon the contest between him and the relator, the court is not limited to a consideration of the exceptions taken by the appellant, but is entitled to consider like exceptions taken by the relator, in order to determine whether errors urged by the appellant are not counterbalanced so as to be rendered harmless by similar rulings against the relator.

ID.—BURDEN UPON APPELLANT TO SHOW ERROR.—The burden is upon the appellant to include in his bill of exceptions all errors upon which he relies for reversal; and his objection to ballots cannot be considered where the bill of exceptions does not show that they were overruled by the court, or that they were counted for the relator.

ID.—MARKING OF BALLOTS—OFFSET BY FOLDING.—An offset caused by the folding of a ballot, from the writing placed upon the ballot by the board, after the ballot had left the hands of the voter, and an apparent double cross appearing by inspection to be clearly an offset caused by folding the ballot while the ink was wet, are not such identifying marks as will vitiate the ballots.

ID.—BALLOTS HAVING STRAIGHT LINES—DECISION OF SUPERIOR COURT—REVIEW.—The decision of the superior court in rejecting ballots so inartistically marked as to have straight lines instead of a cross opposite some of the names, which the court held might be intended as distinguishing marks, must be held conclusive and not subject to review upon appeal.

ID.—INTENT OF VOTER DETERMINED FROM BALLOT.—The intent of the voter must be determined by an inspection of the ballot, and upon whether there is any mark thereon by which it *may* be identified, irrespective of any conjecture as to the purpose or circumstances under which the mark was made.

ID.—DISTINGUISHING MARKS.—Ballots having a double cross, or erasures, or ink blots, or a cross placed below a voting space, or opposite the heading of a column, or after the words ''No nomination'' printed in a column, or having the written name in one column of the same person voted for by cross in another column, or having one or

more names written as electors in blank columns besides crosses placed after the printed names of all the electors entitled to be elected, or having a cross stamped after a written name, all contain distinguishing marks, which require their rejection.

ID.—SPOILING OF BALLOT—DUTY OF ELECTOR.—The elector spoils a ballot when he marks it differently from the mode in which he wishes to vote, or places thereon any mark by which it may be identified. He is not permitted to correct the ballot by erasing the mark, but must procure another in its stead.

ID.—WAIVER OF OBJECTIONS NOT URGED.—Objections to ballots not specifically urged in the superior court must be deemed waived, and cannot be considered upon appeal for the first time.

ID.—COSTS AGAINST INTERVENER.—The intervener, by filing his complaint in intervention, made the relator a defendant thereto; and upon judgment properly rendered in favor of the relator against the intervener, the relator was entitled to recover costs against him, under section 1024 of the Code of Civil Procedure, whether the proceeding between them be considered as an action, or as a special proceeding.

APPEALS from a judgment of the Superior Court of San Bernardino County. Lucien Shaw, Judge presiding.

The facts are stated in the opinion of the court.

James Hutchings, C. C. Haskell, and Hunsaker & Britt, for John L. Campbell, Appellant.

C. C. Bennett, and F. W. Burnett, for Intervener, Appellant.

Tirey L. Ford, Attorney-General, for People, Respondent.

E. R. Annable, R. E. Bledsoe, and William A. Harris, for Relator.

HARRISON, J.—The relator and the intervener were candidates for the office of judge of the superior court in the county of San Bernardino at the general election in November, 1900. Upon canvassing the returns of the election, the board of supervisors declared that each had received the same number of votes, and that there had been no election for the office. The defendant was elected judge of the superior court of that county in 1894 for the term of six years from and after the

first Monday of January, 1895, and continued to hold and exercise the office after the expiration of said term. The present action was brought for the purpose of having it determined that he was unlawfully holding the office and should be excluded therefrom, and that the relator had been duly elected thereto and was entitled to enter upon the discharge of its duties. In his answer the defendant traversed the allegations of the complaint, which purported to show that the relator had received a majority of the votes cast for the office at the election, and set forth his claim to hold the office by virtue of his previous election thereto and the failure to elect a successor. Thereafter the intervener filed a complaint in intervention against both the relator and the defendant, setting forth therein that at the said election he had received a majority of the ballots cast for the office, and that the defendant had unlawfully intruded into and usurped the said office. Issue was joined upon this complaint by both the relator and the defendant, and upon the trial of the cause the ballots cast at the election were opened and counted by the court, from which it determined that 2,773 votes had been cast for the relator and 2,766 for the intervener, and thereupon rendered judgment in favor of the relator, and that upon his taking the oath required by law he should be entitled to take upon himself forthwith the execution of the duties of said office, and that thereupon the defendant be excluded from said office. From this judgment the defendant and the intervener have each appealed, the appeal of the defendant being case No. 1156, and that of the intervener No. 1202.

1. Defendant's Appeal.—The defendant urges in support of his appeal that he is entitled to hold the office until his successor shall have been elected and qualified, and that, as there has been no election of a successor, he has not usurped, nor does he unlawfully hold the office; that, therefore, the action of *quo warranto* against him is unauthorized; that, assuming that the relator had been in fact elected at the general election, he had not taken the oath of office at the time the action was commenced, or when the judgment herein was rendered, and that for this reason also he is entitled to hold the office and discharge its duties; that, as no person had been declared elected to the office, there could be no proceeding for the purpose of contesting the election.

The office of judge of the superior court is created by the constitution, and the same instrument declares (art. VI, sec. 6) that ''the term of office of judges of the superior court shall be six years from and after the first Monday of January next succeeding their election.'' There is no provision therein authorizing such judge to hold his office ''until his successor is elected and qualified'' as there is in regard to the office of governor and other executive officers, and the omission to make such a provision clearly indicates that the framers of the instrument intended that the term of office of a judge of the superior court should end with the expiration of the six years. The constitution is to be interpreted by the language in which it is written, and courts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions. In *People* v. *Whitman,* 10 Cal. 38, in construing a provision under which an executive officer is authorized to hold until the election and qualification of his successor, the court said: ''The case is different with respect to district and supreme court judges. They hold their offices from a day certain and for a fixed period, and not until their successors are qualified.''

The appellant does not contend that he is entitled to hold his office after the expiration of the six years by virtue of any provision in the constitution, but he relies upon the provision of section 879 of the Political Code, which declares: ''Every officer must continue to discharge the duties of his office, although his term has expired, until his successor has qualified.'' This section does not in terms purport to give authority to the incumbent of an office to hold the same after his term has expired, but merely imposes certain duties upon him whenever he is authorized to hold over after the expiration of his term. There are many offices, especially those created by the legislature, in which the incumbent is authorized to hold the office until the election and qualification of his successor, and full effect can be given to section 879 by limiting its provisions to such offices. But when the term of office is fixed by the constitution in definite and precise language, as it is in the case of judges of the superior court, it is not competent for the legislature to extend that term. It does, however, extend the term, if its declaration that an incumbent shall continue to perform its duties, although his term has expired, may be

construed as giving him authority to continue to hold the office after the expiration of his term.

The provisions of section 9 of article XI and of section 16 of article XX of the constitution, cited by the appellant, as well as the cases cited by him which have arisen under the provisions of these sections, are inapplicable. The provision in article XI relates to a "county, city, town, or municipal officer," for whose term of office the constitution makes no provision; and section 16 of article XX relates solely to officers whose term is "not provided for in the constitution." The question presented in the cases cited by him was whether upon the expiration of the term of the officer a vacancy was thereby created which the governor was authorized to fill by appointment. In *People* v. *Tilton,* 37 Cal. 614, the court held that the provision in the statute that the officer might hold his office until his successor was elected and qualified was not an extension of his term of office, in violation of section 7 of article XI of the constitution of 1849 (which corresponds to section 9 of article XI of the present constitution), but was the creation of an additional, contingent term, which was within the power of the legislature. The legislature, however, has no power to create an additional term for an office whose term is limited by the constitution. In *People* v. *Edwards,* 93 Cal. 153, the court said: "Where the term of office is fixed, determinate, a provision requiring the officer to continue to discharge the duties of his office, although his term has expired, until his successor has qualified, adds an additional, contingent, and defeasible term to the original fixed term." In the case of an office created by the legislature, as were all the offices in the cases cited by the appellant, it was competent for the legislature to provide for such additional contingent term, but when the office, as well as its term, is "fixed, determinate," by the constitution, the legislature has no power to extend or diminish the term or to add any contingent term thereto. In *Stratton* v. *Oulton,* 28 Cal. 44, the court expressly stated that its decision was not to be understood as holding that the rule of the common law would extend to members of the legislature, or to judicial officers, or to the executive.

We hold, therefore, that the term of office of the defendant expired January 7, 1901, and that he was not entitled to con-

tinue to hold the office after that time. As he was therefore at all times thereafter unlawfully holding the office, the action of *quo warranto* was properly brought for the purpose of removing him therefrom. Whether the relator is entitled to the office, or whether in the controversy between the relator and the intervener the court committed any error, is a matter which does not concern the defendant (*People* v. *Abbott,* 16 Cal. 358), and upon which he is not entitled to be heard.

2. INTERVENER'S APPEAL.—The intervener has appealed from the judgment upon the ground that the court erred in rejecting from the count certain ballots which should have been counted for him, and in counting for the relator certain ballots which should have been rejected. Objections and exceptions to the rulings thereon were made by the respective parties to the validity of a great number of the ballots, and the ballots thus excepted to have been brought to this court for inspection. It is only necessary, however, to consider those which the appellant has specified in his brief as errors for which he seeks a reversal of the judgment.

The bill of exceptions upon which the appeal is presented, in addition to exceptions taken by the intervener, contains also certain exceptions taken by the relator to the rulings of the court upon the validity of the ballots; but it is urged by the appellant that these exceptions on the part of the relator cannot be considered upon this appeal, citing in support of this position certain cases in which it has been held that upon an appeal from a judgment this court will not consider any errors committed against the respondent. The principle of these cases, however, is inapplicable to a proceeding of this nature. Upon a recount of the ballots in a contested election case the superior court reviews the action of the canvassing boards for the purpose of determining whether the ballots have been correctly counted, and in connection therewith to determine whether any of the ballots that were cast should be rejected from the count. In making its rulings for this purpose it is manifest that they should have a uniform and impartial application to both parties, and that the same ruling which it makes in reference to counting or rejecting ballots offered by one party should be made when similar ballots are offered on behalf of the other party. If in making such ruling the court has erroneously rejected a ballot in favor of the

CXXXVIII. Cal.—2

appellant, or erroneously counted one in favor of the respondent, there can be no injustice in permitting the respondent to show that this error against the appellant is offset by a similar error in his favor. If it appears from the record that the errors urged by the appellant are counterbalanced by similar errors against the respondent, the appellant fails to show that he has been prejudiced by the judgment. (See *Webster* v. *Byrnes,* 34 Cal. 273; *People* v. *Town of Sausalito,* 106 Cal. 500.) The respondent is not asking upon this appeal for any affirmative relief against the appellant, nor does he ask the court to consider any ruling of the superior court of a character different from the rulings objected to by the appellant; but he urges that the rulings to be applied to all the ballots, whether offered or objected to by either party, should be the same, and claims that in that case the errors relied upon by the appellant are shown to be harmless, since it appears from the record that a different result would not have been reached.

Neither is the respondent deprived of the right to have these exceptions by him considered, by reason of the fact, as stated in the brief of appellant, that upon the rendition of the judgment he assumed the office and entered upon the discharge of its duties. By this act he did not take or accept the fruits of the judgment *from the appellant,* nor has he taken any appeal from the judgment whose fruits he has accepted; but he is merely seeking to maintain the validity of that judgment by the very record which has been brought here by the appellant. The operation of the judgment against the defendant was not stayed by the appeal of the intervener (Code Civ. Proc., sec. 949), and the relator in qualifying for the office and entering upon its duties was merely acting in compliance with the provisions of the law.

The statement in the bill of exceptions that "other ballots were objected to by both parties and counted or rejected by the court and excepted to which are not mentioned herein," is not available to appellant for the purpose of reversing the judgment or depriving the respondent of the right to have his objections and exceptions to the rulings thus made considered upon the appeal. It was incumbent upon the appellant to include in his bill of exceptions all the errors of the court below upon which he relied for a reversal.

For the sake of brevity the ballots which are designated in the bill of exceptions as "Intervener's Exhibit, counted," are designated in this opinion by the letter *a*; "Intervener's Exhibit, rejected," by the letter *b*; "Relator's Exhibit, counted," by the letter *c*; and "Relator's Exhibit, rejected," by the letter *d*.

The bill of exceptions does not show that the objections of appellant to Ballots Nos. 33 (a) and 289 (a) were overruled by the court, or that the said ballots were counted for the relator. The objection made by him to ballots Nos. 44 (b) and 48 (b), "because neither of said ballots had a cross stamped after the name of said relator," and the objection to ballot No. 281 (a), that it has "a cross over the word 'electors' in the Republican ticket," is not sustained by an inspection of the ballots.

Ballot No. 22 (c), which had been rejected by the election board, was properly counted for the relator. The mark resembling a letter S, which the appellant claimed was an identifying mark, clearly appears to be an offset by folding from the writing placed upon the ballot by the board, after the ballot had left the hands of the voter. There was no evidence before the court from which it could reject the ballot upon the ground that it was the second ballot of a voter. So, too, ballot No. 303 (a) was properly counted for the relator. The mark which the appellant claimed to be a double cross is shown by inspection to be clearly an offset caused by folding the ballot while the ink was wet.

Ballots Nos. 145 (c) and 154 (c) are inartistically marked, having straight lines instead of a cross opposite some of the names, which the superior court held might have been made for the purpose of a distinguishing mark, as well as through want of skill, and therefore rejected them. The action of the superior court in thus construing the ambiguous marks upon the ballots must be held conclusive and not subject to review.

A large number of ballots were rejected from the count in favor of either contestant upon the ground that a double cross marked thereon by the voter was a distinguishing mark by which they could be identified. This was in accordance with the rule declared in *Farnham* v. *Boland*, 134 Cal. 151, although that case had not then been decided. Upon many of the ballots thus marked the court made provisional rulings when

they were offered, reserving them for further consideration before deciding the case, and upon the final submission of the cause held that of these ballots twenty-three should be counted for the relator and twenty-four for the intervener, giving as its reasons therefor that in its opinion the manner in which the double cross was made upon the several ballots indicated that the voter had intended to cast his ballot in that way. In this respect the court failed to respect the rule given in *Farnham* v. *Boland,* and disregarded the provision of section 1215 of the Political Code forbidding the voter from placing *any* mark upon his ballot by which it *"may* afterward be identified.'' The intent of the voter must be determined by an inspection of the ballot, and upon whether there is any mark thereon by which it *may* be identified, irrespective of any conjecture as to the purpose or circumstances under which the mark was made. Of the ballots thus counted for the relator the appellant specified eleven as having been improperly counted for the relator by reason of being thus marked with a double cross, and insists that under the rule declared in *Farnham* v. *Boland* they should have been rejected. In reply to this objection the respondent shows that it appears from the bill of exceptions that a far larger number of ballots marked by the voters with a double cross were counted for the intervener over the objections of the relator, and that it thus appears that the intervener was not prejudiced by the rulings of the court.

The objections of the appellant to counting for the relator ballots Nos. 36 (a), 137 (a), and 276 (a), upon the ground that they contain certain erasures which might serve as distinguishing marks, should have been sustained and the votes rejected (*Salcido* v. *Roberts,* 136 Cal. 670) ; but, as in the case of ballots marked with a double cross, the relator has pointed out that the court counted for the intervener over his objections ballots Nos. 163 (c), 192 (c), and 333 (c), in which there were similar erasures, and that therefore no harm was done.

The appellant also assigns as error the rejection of certain ballots in his favor, which he says an examination ''will fail to reveal any defect deserving of notice.'' Of the ballots thus specified No. 19 (b) has a large ink-blot on one of the margins; No. 85 (b) has a hole through it where an attempt

was made to erase a mark made with the stamp; No. 213 (b) has a cross below the voting-space in the Republican column for electors; No. 323 (b) has a cross opposite "For Electors" in the Republican column. These were distinguishing marks, and justified the court in refusing to count the ballots. In the other ballots thus specified there are either erasures or attempted erasures of marks once placed upon the ballot by the voter, which he afterwards sought to remove, apparently either because it did not indicate the vote he wished to cast or because he had made a mistake in placing the cross, or after placing it had wished to vote differently. They were each a deliberate act of the voter, in contravention of the provision of section 1207, which provides that if the voter spoil a ballot he must return it to the ballot clerk and receive another in its place. The voter "spoils" a ballot when he marks it different from the mode in which he wishes to vote or places thereon any mark by which it may be identified. He is not permitted to correct the ballot himself by erasing the mark, but must procure another in its stead.

In ballots Nos. 95 (a), 134 (a), 235 (a), and 242 (a), the voter had marked a cross after the words "No nomination" printed in one of the columns. The court overruled this objection to their validity and counted the ballots for the relator. The same defect exists in ballot No. 70 (c), which was counted for the intervener. Each of these ballots should have been rejected. (*Patterson* v. *Hanley,* 136 Cal. 265; *People* v. *Board of Canvassers,* 156 N. Y. 36.)

In ballots Nos. 18 (a) and 236 (a) the name of the relator was printed in the Democratic column, and was also written in the blank column, and for this reason they were erroneously counted for him. Section 1205 provides that the voter shall prepare his ballot "by marking a cross after the name of the person or persons for whom he intends to vote," or "by writing a name or names in the blank column." He is not authorized to do both. The writing of a name in the blank column after having marked a cross in the printed column against the name of a candidate for the same office, is a most efficient mode of placing an identifying mark upon a ballot. For the same reason ballots Nos. 118 (c) and 228 (c) were erroneously counted in favor of the appellant. No. 118 (c) has a cross marked against the names of the nine electors

printed in the Democratic column, and has also the name "Wm. McKinley" written for elector in the blank column. No. 228 (c) has a cross marked against the printed names for electors in the Republican column, and has also nine names written for electors in the blank column.

The court properly rejected ballot No. 322 (d), in which a cross was marked against the printed names of the electors in the Republican column, and the name "McKinley" was written in the blank column for electors, and upon the same ground should have rejected the two ballots above named. In ballot No. 164 (d) the name "Wm. McInly" was written in the blank column for electors, but did not have a cross marked against any of the printed names for that office. It was therefore improperly rejected, and should have been counted for the intervener. (See *Patterson* v. *Hanley,* 136 Cal. 265.)

Ballot No. 159 (a) was improperly counted for the relator. The name of "Joe Jachan" was written in the blank column for the office of constable, and a cross was also stamped against it. Section 1205 permits the voter to make a cross only after a printed name.

In ballot No. 323 (a) the name of "John Davis Clark" was written in the blank column for supervisor, and the intervener's objection, "because of writing outside of voting space in the blank column," was overruled and the ballot counted for the relator. This objection was based upon the fact that the name is written in the blank column, but beneath the line in which the office was designated. This, however, did not violate any mandatory provision of the statute, and the objection was properly overruled. The objection that writing his name in the blank column was unauthorized because it was also printed upon the ballot was not made in the superior court. It cannot be considered when made for the first time upon appeal. (*Lay* v. *Parsons,* 104 Cal. 661.) For the same reason the objection of the relator to counting for the intervener ballot No. 196 (c), upon the ground that the voter had marked a cross after the words "No nomination," cannot be considered. The only objection made in the superior court was "on the ground that the name of J. B. Glover was written on said ballot."

As above seen, the superior court counted in favor of the appellant one ballot more of those marked with a double cross

than it did for the relator, all of which we have shown should have been rejected. Deducting this vote from the total of those counted by it for the appellant, and making other proper corrections of the count, as hereinbefore indicated,—viz., by deducting from those counted in favor of the relator ballots Nos. 95, 134, 235, 242, 18, 236, and 159, and from those counted in favor of the appellant ballots Nos. 70, 118, and 228, and adding to the score for the appellant ballot No. 164,—it results that three more votes were cast for the relator than for the appellant, and that the judgment declaring him elected was therefore correct.

The court properly rendered judgment against the intervener for the costs of the proceedings incurred subsequent to filing the complaint in intervention. By filing his complaint in intervention he made the relator a defendant thereto, and from the judgment thereon against him the plaintiff was entitled to recover costs from the intervener, by virtue of the provisions of· section 1024 of the Code of Civil Procedure, if this be regarded as a special proceeding, or by virtue of section 1025 of the Code of Civil Procedure, if it be regarded as an action.

The judgment is affirmed.

Van Dyke, J., McFarland, J., and Garoutte, J., concurred.