[Sac. No. 2417. In Bank.—December 21, 1915.]

## J. L. TURNER, Jr., Contestant and Appellant, v. W. C. WILSON, Contestee and Respondent.

ELECTION—IDENTIFICATION MARKS ON BALLOT—EFFECT OF AMENDMENT
OF 1903 TO SECTION 1211 OF POLITICAL CODE.—The effect of the
amendment of 1903, adding subdivision 4 to section 1211 of the
Political Code, reading as follows: "No mark upon a ballot which
is unauthorized by this act shall be held to invalidate such ballot,
unless it shall appear that such mark was placed thereon by the
voter for the purpose of identifying such ballot," is, that where there
is no evidence whatever before the trial court other than the ballot
itself, unless such ballot is so marked as to warrant an inference by
the trial court that the marking was designedly made by the voter
for the purpose of identifying his ballot, the ballot must not be re-
jected on the ground that it bears a distinguishing mark.

ID.—IRREGULARITIES IN MARKING BALLOT—INSUFFICIENT EVIDENCE OF
PURPOSE OF IDENTIFICATION.—In the absence of evidence, other than
the ballot itself, of a marking for purposes of identification, a ballot
containing a vote for a candidate for a particular office should not
be rejected as a vote for him merely because it contained a cross
stamped in the voting square opposite a blank space under the
name of a candidate for a different office, or because the voter,
having written in the name of a person as a candidate for an office
in the blank space left for that purpose on the ballot, had first
placed a pencil cross in the blank space provided for that purpose,

and had then stamped over said pencil cross a cross with the stamp, or because the voter, having marked a cross with a pencil in the proper place opposite the names of certain officers, had then used the voting stamp for the whole of his ballot, placing the stamped crosses in the case of the candidates already marked with pencil over the pencil crosses, or because the voter had stamped a cross in both the "Yes" and "No" voting squares opposite a proposition being voted on.

ID.—WRITING NAME OF CANDIDATE ON BALLOT—CROSS NOT ESSENTIAL.— Under subdivision 1 of section 1211 of the Political Code, a cross opposite a name written on the ballot is not essential to a vote for the person so designated, and the placing of a pencil cross opposite such name cannot invalidate the ballot unless it appears that it was placed there for the purpose of identification.

ID.—WRITING WORDS "YES" OR "NO" OPPOSITE PROPOSITION VOTED ON.— The writing of the words "Yes" and "No" in the voting squares opposite certain propositions being voted on does not invalidate the ballot for other purposes, there being no other evidence of a marking for the purpose of identification.

ID.—ELECTION CONTEST—APPEAL—FINDINGS SUSTAINED BY EVIDENCE.— Where on appeal in an election contest the evidence is held to sustain the findings that the contestee did and the contestant did not receive a majority of the votes cast for the office in question, the mere fact that the findings are incorrect as to the exact number of votes received by each of the parties does not require a reversal.

APPEAL from a judgment of the Superior Court of Merced County. E. N. Rector, Judge.

The facts are stated in the opinion of the court.

Ostrander, Tuttle & Ostrander, for Appellant.

F. W. Henderson, for Respondent.

W. H. Early, and Thomas P. Boyd, *Amici Curiae.*

ANGELLOTTI, C. J.—This is an action to determine whether the contestant or contestee was elected constable of Township No. 4, Merced County, at the election on November 3, 1914. At the canvass of the votes by the board of supervisors the return made was that each candidate had received one hundred and sixty-eight (168) votes, and that neither of them was elected. At the hearing in the superior court it was found that contestee (Wilson) had received 165

votes and the contestant (Turner) 160 votes, and it was there adjudged that the contestee was elected. The contestant appeals from the judgment on a bill of exceptions.

At the election contestant's name was the only name printed on the ballot for the office of constable, the supporters of contestee being able to express their preference only by writing his name upon the ballot.

1. This cause was originally decided by the district court of appeal of the third district, which, in view of the provisions of our constitution, has appellate jurisdiction in the matter of election contests. Upon petition for a hearing in this court after decision by the district court of appeal, the decision of the latter court was vacated and the cause transferred to this court, the members of this court not being satisfied that the views of the district court of appeal as to the rejection by the trial court of certain ballots on the ground that the same contained distinguishing marks were correct.

The ballot marked "Contestee's Objection No. 1," containing a vote for Turner, was rejected by the trial court because of the fact that the voter had stamped a cross in the voting square opposite the blank space under the name of "Hiram W. Johnson," candidate for Governor.

The ballot marked "Contestee's Objection No. 9," containing a vote for Turner, was rejected because of a cross stamped by the voter in the voting square opposite the blank space under the name of "Lucien Shaw," candidate for justice of the supreme court.

The ballot marked "Contestee's Objection No. 12," containing a vote for Turner, was rejected because of such a cross in the voting square opposite the blank space under the name of "U. S. Webb," candidate for attorney-general.

The ballot marked "Contestee's Objection No. 26," containing a vote for Turner, was rejected because of a similar cross placed in the voting square opposite the blank space under the name of "William M. Conley," candidate for chief justice of the supreme court.

The ballot marked "Contestee's Objection No. 8," containing a vote for Turner, was rejected because the voter having written in the name of "L. S. Cardwell" as a candidate for justice of the peace in the blank space left for that purpose on the ballot, had first placed a pencil cross in the

blank space provided for that purpose, and had then stamped over said pencil cross a cross with the stamp.

The ballot marked "Contestee's Objection No. 19," containing a vote for Turner, was rejected because the voter had marked his cross with a pencil in the proper place in the case of the first four offices on the ballot and then apparently perceiving his mistake, had used the voting stamp for the whole of his ballot, placing the stamped crosses in the case of the candidates already marked with pencil over the pencil crosses.

The ballot marked "Contestee's Objection No. 25," containing a vote for Turner, was rejected because the voter had apparently stamped a cross in each of the voting squares of the twenty-second proposition, there being a cross opposite "Yes" and also a cross opposite "No."

The district court of appeal concluded that the action of the trial court in rejecting these ballots was correct, except in the case of the ballot marked "Contestee's Objection No. 8." We are satisfied that none of these ballots should have been rejected, and that all of them should have been counted for Turner.

In the year 1903 our election law relating to the canvass of votes and marked or spoiled ballots was amended by the addition of subdivision 4 to section 1211 of the Political Code, reading as follows: "No mark upon a ballot which is unauthorized by this act shall be held to invalidate such ballot, unless it shall appear that such mark was placed thereon by the voter for the purpose of identifying such ballot." This provision has ever since been in force. The only purpose thereof was to prevent the rejection of ballots containing some unauthorized mark which was not the result of an intent on the part of the voter to identify his ballot. Theretofore, the very stringent provisions regarding the marking and rejecting of ballots had been so construed by the courts as to result in the exclusion of numerous such ballots, although it was perfectly clear from an inspection of the ballots themselves that the mark was made without evil intent of any kind. The effect of the amendment is that where there is no evidence whatever before the trial court, other than the ballot itself, unless such ballot is so marked as to warrant an inference by the trial court that the marking was designedly made by the voter for the purpose of identify-

ing his ballot, the ballot must not be rejected on the ground that it bears a distinguishing mark. We so intimated in withholding our approval of a portion of the opinion of the district court of appeal in *Gray* v. *O'Banion,* 23 Cal. App. 468, 479, [138 Pac. 977, 981], citing this very provision of our law. Decisions relative to distinguishing marks rendered prior to the amendment we have referred to must be read in the light of the law as it then was. We find on none of the seven ballots to which we have referred anything warranting the inference that the unauthorized mark was placed thereon by the voter for the purpose of identifying the ballot, and there was no other evidence as to the intent of those marking the ballots. Counting these seven ballots for Turner would give Wilson 165, Turner 167.

2. Certain ballots counted by the trial court for Wilson, marked "Contestant's Objections A, E, I, J, M, P, U, X, A4, A5, A8, A9 and A10," were properly so counted. As to all of these except the ballot marked "Contestant's Objection P," we are satisfied with the views expressed by the district court of appeal in its opinion in this case. The district court of appeal held that the trial court should have rejected said ballot "P" on the ground that the same was really a vote for "W. E. Walson" instead of "Wilson," but an inspection of the ballot satisfies us that the trial court was warranted in concluding that the second letter was an "I" instead of an "A," making the name "Wilson." The same may be said as to certain ballots claimed to read "Welson" instead of "Wilson."

3. We have examined the other ballots referred to in the bill of exceptions as to which objections were made, and from our examination we have concluded as follows:

The ballot marked "Contestant's Objection D," containing a vote for Wilson, which was rejected by the trial court, should have been counted for Wilson.

The same is true of ballots marked "K, L, N, Q, S, A2 and A3."

It is obvious from the inspection of the ballot that the alleged identification mark on ballot "D" was not placed thereon with any intent to identify the ballot.

The same is true of the pencil cross on ballot "L," opposite the name of "W. C. Wilson," written in by the voter. A cross is not essential in the case of a name written on the

ballot (see subd. 1, sec. 1211, Pol. Code), and the pencil cross cannot invalidate unless it appears that it was placed there for the purpose of identifying the ballot.

The same is true of ballot "N."

The name written on ballot "K" for constable was clearly that of "Wilson."

Ballot "Q" is exactly like ballot "D."

Ballot "S" furnishes no support for the conclusion that the pencil mark was placed there for the purpose of identifying the ballot.

Ballots "A2 and A3" contain nothing making it appear that the alleged distinguishing marks thereon were placed thereon by the voter for the purpose of identifying the ballots.

This makes eight additional votes for Wilson, bringing his vote to 173.

4. Ballots marked "Contestee's Objections 16 and 17," each of which contained a vote for Turner, were rejected by the trial court. They should have been counted for Turner. In one case the voter had written in one of the voting squares provided for the vote on certain bond questions the word "Yes," there being four such propositions so voted on by him. In the other case the voter had attempted to vote on such propositions by writing the word "No," in said voting squares. Whatever may be held to be the effect of this manner of voting on these particular propositions, it is perfectly clear that the word "Yes" in the one case and the word "No" in the other case were not placed on the ballot by the voter for the purpose of identifying his ballot. The addition of these two votes makes Turner's vote 169.

It is to be noted that in so far as alleged distinguishing marks are concerned, there was no evidence whatever before the court as to the intention of the voter saving and excepting the ballot itself.

As to all of the ballots referred to in the bill of exceptions that we have not particularly discussed or mentioned, we find that the trial court committed no error.

There is no necessity for a new trial of this case. The bill of exceptions purports to contain an appropriate reference to all the ballots to which objection was made, and the rulings of the court thereon, and it is clear that counting such ballots as should be counted for Wilson and such ballots as should be counted for Turner, and excluding all ballots

that should not be counted for either party, Wilson has 173 votes and Turner 169 votes. The findings that contestee did receive the highest number of votes cast in such judicial township for said office of constable, and that it is not true that contestant received a majority of said votes, are fully supported by the evidence, and the mere fact that the findings are incorrect as to the exact number of votes received by each of the parties does not require a reversal.

The judgment appealed from is affirmed.

Sloss, J., Melvin, J., Henshaw, J., Lorigan, J., and Lawlor, J., concurred.

SHAW, J., Concurring.—I concur in the opinion of the chief justice.

I think, however, that something additional should be said in regard to the seeming conflict between subdivisions 4 of section 1211 of the Political Code and the preceding portions of the chapter bearing on the subject of improper marks on the ballot.

With respect to all these inconsistencies the case calls for the application of the rule expressed in section 4484 of the Political Code, that where there are conflicting provisions in different sections of the same chapter or article, "the provisions of the sections last in numerical order must prevail, unless such construction is inconsistent with the meaning of such chapter or article." The rule is founded in reason and it exists independently of the code. It therefore, for like reasons, applies to conflicting provisions of different subdivisions of a section. (1 Sutherland on Statutory Construction, sec. 268.)

There is also the rule that specific provisions relating to a particular branch of a subject must govern that branch, "as against general provisions in other parts of the statute, although the latter, standing alone, would be broad enough to include the subject to which the more particular provisions relate." (*Harrigan* v. *Home Ins. Co.,* 128 Cal. 537, [58 Pac. 180, 61 Pac. 99]; *Franzden* v. *San Diego County,* 101 Cal. 321, [35 Pac. 897]; *Earl* v. *Bowen,* 146 Cal. 762, [81 Pac. 133]; *Healy* v. *Superior Court,* 127 Cal. 659, 662, [60 Pac. 428].)

Since subdivision 4 is later in numerical order than any of the provisions conflicting therewith, it must, under the rule

first stated, prevail over them, and since it specifically provides that the intention of the voter to identify his ballot must appear, before it could be declared invalid because of an unauthorized mark thereon, and there is no other specific provision on that precise subject, it must govern that subject, under the rule last stated.

Applying these rules we will see that the provision of subdivision 1 of section 1211 declaring that "in canvassing the votes any ballot which is not made as provided in this act shall be void," must yield to the later and specific provision of subdivision 4, which requires that the intention on the part of the voter to identify the ballot must appear. Similar reasons may be given regarding all of the other provisions supposed to conflict with subdivision 4, aforesaid.

It may be further said, with respect to the provision of subdivision 8 of section 1197, as amended in 1911, and of subdivision 10 of the amendments of 1913, [Stats. 1913, p. 1157], and 1915, [Stats. 1915, p. 272], providing that there shall be printed on the ballot certain instructions to voters, one of which is that distinguishing marks and erasures make the ballot void, that this is not an enactment of substantive law at all, but a mere provision that certain cautions shall be given to the voter himself. These instructions to voters have been carried down in the same form from the time when the statute provided that every distinguishing mark should invalidate the ballot, and it apparently has not been perceived that subdivision 4 aforesaid changes the rule in that respect.