[S. F. No. 7646.    In Bank.—February 17, 1916.]

## FRED W. SWEETSER, Appellant, v. G. PACHECO. Respondent.

ELECTIONS—LEGAL BALLOT—CROSS STAMPED IN‘ VOTING SQUARE OPPO-
SITE BLANK SPACE.—A ballot on which the voter stamped a cross in the voting square at the right of a blank space left for the insertion by the voter of a name not printed on the ballot, without writing a name in this space, should be counted.

ID.—INTENTION TO IDENTIFY BALLOT—NAME OF CANDIDATE PRINTED ON
BALLOT AND WRITTEN IN ALSO.—A ballot on which the voter had written a name in the blank space for a certain office, although that name was also printed on the ballot as a candidate for that office, there being nothing to indicate that it was done for the purpose of identifying the ballot, should be counted.

ID.—NAMES WRITTEN ON BALLOT AND CROSS AFTER NOT STAMPED IN
VOTING SQUARE.—A ballot, on which the voter had written in the names of two persons for two several offices and stamped a cross after their names but not in the square placed on the ballot for that purpose, should be counted, since there was nothing to indicate any intent to identify the ballot thereby, but such crosses were ineffectual for any purpose.

ID.—CROSS STAMPED AND ERASED.—The stamping of a cross as to both "yes" and "no" on certain propositions submitted on the ballot and the attempted erasure of one of such crosses does not show an attempt to identify the ballot.

ID.—ATTEMPTED CANCELLATION OF CROSS STAMPED ON BALLOT.—An attempt by the voter to cancel with the voting stamp a cross placed by him in a voting square does not show an attempt to identify the ballot.

ID.—CROSS NOT STAMPED IN VOTING SQUARE.—A cross stamped in the rectangular space to the right of the name of a candidate, but not in the voting square, cannot be counted as a vote.

ID.—WRITING IN SAME NAME FOR TWO DISTINCT OFFICES.—The voter has a right to write in the name of a person for two distinct offices.

ID.—CROSS IN, OR PARTLY IN, VOTING SQUARE SOLE METHOD OF VOTING. Section 1205 of the Political Code is mandatory, and under it the only method of voting for a candidate is to place a cross in, or partly in, the voting square opposite his name on the ballot.

ID.—PENCIL CROSS NOT A LEGAL VOTE.—A cross made with a lead pencil in the voting square opposite the name of the candidate is not a cross stamped on the ballot within the meaning of section 1205 of the Political Code, and is not a legal vote for such candidate.

ID.—INTENTION TO IDENTIFY BALLOT—VOTE LEGAL DESPITE DEFECTIVE VOTE FOR OTHER CANDIDATES.—Where there is nothing on the ballot to indicate an intent to identify it, a defective method of voting for other candidates or propositions does not destroy a vote properly made for a candidate on the ballot.

ID.—NAME PARTIALLY WRITTEN AND MARKED OUT.—The fact that the voter had written the first name of a candidate in a blank space for an office and had drawn a pencil through it, and had written the full name of that person as a candidate for another office, does not indicate an intent to identify the ballot.

ID.—ERASURE OF CROSS ON BALLOT—REMOVING CROSS CONSTITUTES A VOTE.—Where there is nothing on the ballot indicating any intent to identify it, erasures of crosses stamped on the ballot do not invalidate it, and a cross opposite the name of a candidate on a ballot from which a cross opposite the name of a rival candidate has been almost entirely erased is a vote for the candidate opposite which it stands.

ID.—DIRECTIONS AT TOP OF BALLOT—UNAUTHORIZED MARKS—INTENTION TO IDENTIFY.—The provision of section 1197 of the Political Code that on the top of the ballot "the following directions shall be printed," including this, that "All marks, except the cross (X) are forbidden. All distinguishing marks or erasures are forbidden and make the ballot void. If you wrongly stamp, tear or deface this ballot, return it to the inspector of election and obtain another,"—is not an enactment of substantive law, but a mere provision that certain cautions shall be given to the voter himself, and unauthorized marks upon a ballot, not placed there with the purpose of identifying it, do not invalidate it.

ID.—CROSS INADVERTENTLY PLACED ON MARGIN—INTENTION TO IDENTIFY.—A very light cross on the margin of a ballot, not having the appearance of a deliberate impression of the voting stamp, with nothing to indicate that it was not inadvertently made, is not an attempt to identify the ballot, and does not invalidate it.

APPEAL from a judgment of the Superior Court of Marin County, Edgar T. Zook, Judge.

The facts are stated in the opinion of the court.

W. H. Early, for Appellant.

Thomas P. Boyd, for Respondent.

ANGELLOTTI, C. J.—The parties to this proceeding, an election contest, were rival candidates for the office of supervisor of the fifth supervisor district in Marin County at the election held November 3, 1914. Upon the canvass of the votes for said office by the board of supervisors it was declared that Mr. Pacheco had received three hundred and fifty-one votes and Mr. Sweetser three hundred and fifty. Thereupon this proceeding was instituted by Sweetser in the superior court of Marin County. Upon a recount of the ballots in court, it was determined by the court that Pacheco had received three hundred and thirty-three votes and Sweetser three hundred and thirty, and by the judgment the former was declared elected. This is an appeal by Sweetser from the judgment, the appeal having been ordered transferred to this court after decision by the district court of appeal of the first district.

The only questions presented by the appeal are as to rulings of the trial court in the counting of ballots. The bill of exceptions shows the proceedings in the trial court as to the ballots to which objection was made by either party, and the ruling of the court thereon, said ballots numbering thirty-eight. By stipulation these ballots were made a part of the bill of exceptions, and have been brought to this court for inspection and consideration.

The trial court counted seven ballots, on each of which the voter had stamped a cross in the voting square at the right of a blank space left on the ballot for the insertion by the voter of some name not printed on the ballot, without writing any name in said space. Its action in that regard was correct, as recently held by this court in *Turner* v. *Wilson*, 171 Cal. 600, [154 Pac. 2].

We have examined all the other ballots counted by the trial court to which objection was made, and find no error. In *Turner* v. *Wilson*, 171 Cal. 600, [154 Pac. 2], we discussed the effect of subdivision 4 of section 1211 of the Political Code, added to the section by amendment in the year 1903, providing that "no mark upon a ballot which is unauthorized by this act shall be held to invalidate such ballot, unless

it shall appear that such mark was placed thereon by the voter for the purpose of identifying such ballot.'' In the case at bar there was no evidence of any kind before the court other than the ballots themselves. In view of this provision and what is said concerning it in *Turner* v. *Wilson,* 171 Cal. 600, [154 Pac. 2], it is clear that the action of the trial court in counting each of these ballots must be approved. On ballot ''Black 10,'' the voter had written the name of J. V. Snyder in the blank space for the office of lieutenant-governor, although Snyder's name was printed on the ballot as one of the candidates for that office. Although this was an unauthorized act, there was nothing to indicate that it was done for the purpose of identifying the ballot. On ballot ''Nicasio 3,'' the voter having written in the names of Frank Rogers and E. Cotta for justice of the peace and constable, respectively, had stamped a cross immediately to the right of each name, but not in the voting square. While such crosses were ineffectual for any purpose, there was nothing therein to indicate any intent to identify the ballot thereby. On ballot ''Nicasio 8,'' the voter had stamped a cross as to both ''Yes'' and ''No'' on one of the many propositions submitted to the voters at that election, and then had attempted to rub out one of said crosses. On ballot ''Nicasio 9,'' the voter had attempted with the voting stamp to cancel a cross placed by him in the voting square on one of the propositions. On ballot ''Novato 2–5,'' the voter had stamped his cross in three instances, not including Pacheco, in the rectangular space to the right of the name of his candidate, but not in the voting square. The cross as to Pacheco was in the voting square. As to none of these ballots was there anything to indicate an intent to identify the ballot. As to ballots ''Black 12,'' ''Novato 1–1,'' and ''Novato 2–16,'' the alleged distinguishing marks were obviously accidental. On ballot ''Black 6,'' the voter had done simply what he had an absolute right to do, written in the name of Wm. Farley for both the office of justice of the peace and constable.

The trial court did not err in refusing to count as a vote for Sweetser either ballot ''Novato 1–15'' or ballot ''Novato 2–8.'' On the former all the crosses, including the only cross opposite Sweetser's name, were stamped in the rectangular space at the right of the name, but none of the

stamps was either wholly or partly within the voting square. Under the law as it now is and has been ever since the year 1903, the only way in which a voter can indicate his intent to vote for a particular candidate is by stamping a cross in, or at least partly in (see Pol. Code, sec. 1211), the voting square, the provisions of section 1205 of the Political Code being mandatory in this regard. Any other method is legally ineffectual to express an intent to vote for a particular candidate, by reason of the express language of this section providing how, and how only, the intent shall be indicated. This is made manifest by what is said by this court as to the mandatory character of section 1205 of the Political Code, in regard to the method of indicating a vote, in *Tebbe* v. *Smith,* 108 Cal. 101, 109, [49 Am. St. Rep. 68, 29 L. R. A. 673, 41 Pac. 454]; *Huston* v. *Anderson,* 145 Cal. 320, 333, [78 Pac. 626], and *Tout* v. *Hawkins,* 143 Cal. 104, 106, [76 Pac. 897]. As that section now is, the voter who has omitted to stamp his cross in, or at least partly in, the voting square, opposite the printed name of a particular candidate, has not voted for that candidate. The case is simply one of no vote. As to ballot "Novato 2–8," all the crosses, including that in the voting square opposite Sweetser's name, were made with a lead pencil. What we have already said applies also to this ballot. In view of the provisions of section 1205 of the Political Code, the intent of the voter to vote for a particular candidate whose name is printed on the ballot can be expressed only by *stamping* a cross in, or at least partly in, the voting square. Lacking such stamped cross, the ballot cannot be counted for such candidate, even though the courts may feel that the voter in fact intended so to vote. The express language of the law forbids it.

The trial court rejected ballot "Nicasio 1," a Sweetser vote, because the voter had stamped the cross as to various propositions on the word "Yes" or "No," instead of in the voting square; also ballot "Novato 2–19," a Sweetser vote, because the voter had stamped the cross on the word "Yes" as to several propositions, and then had stamped a cross in the square; also ballot "Black 8," a Pacheco vote, because the voter had attempted to vote on the various propositions by writing the word "Yes" or "No" in the voting squares instead of stamping a cross, and had also marked a cross with pen and ink in the voting square on one of the proposi-

tions; and also ballot "Novato 1–3," a Pacheco ballot, because the voter had stamped his cross on the word "Yes" or "No" as to various propositions, instead of in the voting square. The vote for supervisor was properly indicated on each of these ballots. It was error to reject any of these votes in so far as the contest for supervisor was concerned. There was nothing on any of these ballots to indicate any intent to identify the ballot, and however defective any of them was to indicate a vote on any other candidate or proposition, it showed a good vote for a candidate for supervisor. (See *Turner* v. *Wilson,* 171 Cal. 600, [154 Pac. 2].)

The trial court erred in rejecting ballot "San Antonio 6," a Pacheco vote. The only objection thereto was that the voter had written with a pencil the word "Matt" in the blank space for chief justice of the supreme court, drawn a pencil line through the word, and had then written the name "Matt Sullivan" in the blank space for chief justice supreme court, short term. Obviously, there was nothing thereon to indicate any intent to identify the ballot.

The trial court rejected fourteen ballots, nine Sweetser votes and five Pacheco votes, because of attempted erasures by the voter, with more or less success, of all signs of the cross first placed by him thereon, as to some candidate or proposition, generally some proposition or propositions. On only one of these was the attempted erasure as to a candidate for supervisor, ballot "Novato 1–2," where the voter had first stamped his cross in the voting square opposite Pacheco's name, and then had almost entirely removed all indications of such cross and stamped his cross in the voting square opposite Sweetser's name. The vote as cast, was clearly one for Sweetser, and the question in regard to this ballot is the same as that presented by the other thirteen ballots on which erasures appeared. We are satisfied that in view of the provisions of subdivision 4 of section 1211 of the Political Code, and the opinion in *Turner* v. *Wilson,* 171 Cal. 600, [154 Pac. 2], it must be held that all of these ballots should have been counted in the contest for supervisor. It is too plain for discussion that there was nothing on any of these ballots to indicate any purpose to thereby identify the ballot. The attempted erasures were at most unauthorized "marks upon the ballot," such marks as it clearly was the object of subdivision 4, section 1211, of the Political

Code to cover. Unless there be some provision of law making a ballot void whenever an erasure or attempted erasure appears thereon, no sufficient ground for the rejection of the ballot exists except that of a distinguishing mark placed thereon by the voter, and this ground of objection is governed by subdivision 4 of section 1211. In this connection reliance is placed by counsel for defendant on a provision in section 1197 of the Political Code, a section devoted to the matter of form of ballot. This section provides that on the top of the face of the ballot, "the following directions shall be printed." Then follow many directions, including this: "All marks, except the cross (×) are forbidden. All distinguishing marks or erasures are forbidden and make the ballot void. If you wrongly stamp, tear or deface this ballot, return it to the inspector of election and obtain another." But, as was said by Mr. Justice Shaw in his concurring opinion in *Turner* v. *Wilson, supra,* this provision "is not an enactment of substantive law at all, but a mere provision that certain cautions shall be given to the voter himself." This was definitely held by this court in *Tebbe* v. *Smith,* 108 Cal. 101, 109, [49 Am. St. Rep. 68, 29 L. R. A. 673, 41 Pac. 454], as to another portion of the directions contained in said section 1197, viz.: "To vote for a person, stamp a cross (×) in the square at the right of name." At the time of that decision, section 1205, the section providing how the voter must indicate his choice, simply provided that he shall prepare his ballot "by marking a cross *after* the name of the person," etc., saying nothing about a voting square, and it was held that a cross "after the name" which was not in the voting square should be counted. As we have seen, the law in this particular respect has since been changed. It was said that "the mandatory provisions as to voters are found in sections 1205 and 1215 of the same code," and that neglect to comply with the directions printed on the ballot to place the cross in the voting square did not make the ballot void. It was also said that while "the statute contemplates, at least inferentially, the making of a square, and that the square is the proper place for the marking of a cross, . . . it has not made the doing of this a prerequisite to the casting of a legal ballot." And so here, while section 1197 still provides for printing a direction on the ballot that "all distinguishing marks or erasures are for-

bidden and make the ballot void," there is absolutely no provision of substantive law anywhere in the code to the effect that "a distinguishing mark or erasure" does make the ballot void. As was said by Justice Shaw in his concurring opinion to which we have referred, "these instructions to voters have been carried down in the same form from the time when the statute provided that every distinguishing mark should invalidate the ballot, and it apparently has not been perceived that subdivision 4 aforesaid changes the rule in that respect." The controlling rule of substantive law as to the invalidating of ballots by reason of unauthorized marks, including erasures, is that contained in subdivision 4 of section 1211 of the Political Code. There is no difference between erasures and other unauthorized marks in this regard. As was said in *Turner* v. *Wilson,* 171 Cal. 600, [154 Pac. 2], decisions relative to unauthorized marks on a ballot rendered prior to the amendment of section 1211 in this regard must be read in the light of the law as it then was. The real ground on which ballots containing erasures were rejected in *People* v. *Campbell,* 138 Cal. 11, 20, [70 Pac. 918], was, as is apparent from the opinion, that the erasures "might serve as distinguishing marks." The court said: "The objections of the appellant to counting for the relator ballots No. 36(a), 137(a), and 276(a), upon the ground that they contain certain erasures which might serve as distinguishing marks, should have been sustained and the votes rejected," citing *Salcido* v. *Roberts,* 136 Cal. 670, [69 Pac. 431]. In the case so cited, where the voter had attempted to "rub out" a written name, rendering it illegible, this court ruled that the ballot should have been rejected, because by the erasure the voter had left a conspicuous mark on the ballot "by which it might easily have been identified." At the time of these decisions, both prior to the enactment of subdivision 4 of section 1211 of the Political Code, the settled law of the state was that the ballot must be rejected if the voter placed thereon any mark by which it *might* be afterward identified as the one voted by him. It was for the very purpose of changing this rule that subdivision 4 of section 1211 was enacted. Of course, in the light of that amendment, it is impossible to hold, as was said in *People* v. *Campbell,* 138 Cal. 11, [70 Pac. 918],

that a voter "spoils" a ballot when he places thereon "any mark by which it *may* be identified." (The italics are ours.)

The trial court rejected ballot "Novato 2–13," a Sweetser vote, on the objection that a cross near the upper right-hand corner of the ballot, on the margin to the right of the directions to voters, constituted a distinguishing mark invalidating the ballot. The cross is very light, and does not have the appearance of being the result of a deliberate impression of the voting stamp. There is absolutely nothing to indicate that it was not inadvertently made. We are satisfied that it cannot fairly be held that it appears from the ballot that this cross "was placed thereon by the voter for the purpose of identifying' such ballot," and the statute says that such a mark cannot be held to invalidate the ballot, unless this appears. As already suggested, the only evidence on the subject is the ballot itself. We must hold that the learned trial judge erred in his conclusion that it appeared that this cross was placed on the ballot by the voter for the purpose of identifying the ballot, and in refusing to count the same as a vote for Sweetser.

What we have said disposes of all the ballots to which objection appears to have been made on either side. The erroneous rulings were in the rejection of twenty ballots, eight of which were Pacheco votes and twelve Sweetser votes. The ballots as to which no objection appears to have been made must be assumed to have been correctly counted. The result is that Pacheco received three hundred and forty-one votes instead of three hundred and thirty-three, and that Sweetser received three hundred and forty-two votes instead of three hundred and thirty. The trial court found the vote of each by precincts, and also in the aggregate. The findings as to precincts should have been as follows:

| | | | | |
|---|---|---|---|---|
| Novato 1 | Sweetser | 98 | Pacheco | 84 |
| Novato 2 | " | 126 | " | 97 |
| Nicasio | " | 63 | " | 50 |
| San Antonio | " | 21 | " | 73 |
| Black | " | 34 | " | 37 |

The only grounds of contest alleged in the statement filed by the plaintiff were malconduct of the election officers in the various precincts, in that they miscounted the ballots cast, and illegal votes. The latter ground apparently was

not urged on the trial, and the bill of exceptions shows that the proceedings on the trial consisted solely of a recount of the ballots cast, for the purpose of determining whether they were properly counted. The findings of the trial court show simply the conclusions based entirely on such recount. As already stated, the bill of exceptions shows all objections made by either party to ballots, respondent as well as appellant, as is proper in a proceeding of this character. (See *People* v. *Campbell,* 138 Cal. 11, 17, [70 Pac. 918].) In such a proceeding, too, it is clear that, in view of the record, it must be taken as settled that ballots as to which no objection was made were properly counted. Therefore, nothing remains for the trial court to do in the matter of this contest except to add to the totals already declared by it said twenty rejected ballots, that is, twelve for Sweetser and eight for Pacheco, making their respective totals three hundred and forty-two and three hundred and forty-one, to make its findings accordingly, and thereupon to enter judgment declaring Sweetser elected. No useful purpose can be accomplished by any further proceedings in the trial court, and the law contemplates as summary a disposition of proceedings of this character as is consistent with a proper ascertainment of the result of the election.

The judgment is reversed and the cause remanded, with directions to the trial court to count the twenty rejected ballots declared by the opinion herein to have been improperly rejected, for the parties for whom they were cast, viz., twelve for plaintiff Sweetser and eight for defendant Pacheco; to add to the total vote heretofore declared by the findings as having been received by each party the votes thus gained; to make its findings of fact accordingly; and thereupon to enter judgment annuling the election of defendant Pacheco and declaring plaintiff Sweetser elected.

Shaw, J., Sloss, J., Henshaw, J., Melvin, J., and Lawlor, J., concurred.