THOMAS MCSORLEY

*v.*

FRED SCHROEDER.

*Opinion filed April 16, 1902.*

1. ELECTIONS—*section 12 of Ballot act of 1891 is the only provision relating to pasters.* Section 12 of the Ballot law of 1891, providing that the election officer having charge of the ballots may place the name of a candidate supplied to fill a vacancy, in certain contingencies, upon the ballot by affixing a paster or by writing or stamping before the ballot is delivered to the voter, is the only provision of the act concerning pasters.

2. SAME—*method of voting for candidate whose name is not on ticket.* Under section 23 of the Ballot act of 1891, if a voter desires to vote for a person whose name is not on the ticket he may write the name of the candidate of his choice in a blank space on the ticket and make a cross opposite thereto, but he has no right to substitute for such method the pasting of a slip of paper, containing the name of his candidate over the name of some other candidate.

3. SAME—*effect where voter pastes name of candidate over another name.* Ballots prepared by voters by pasting a slip of paper, with a name printed thereon, over the name of a candidate printed on the ticket, are invalid, and cannot be counted for any candidate on the ballot.

APPEAL from the Circuit Court of Iroquois county; the Hon. R. W. HILSCHER, Judge, presiding.

This is a petition, filed on May 16, 1901, in the circuit court of Iroquois county by appellee to contest the election of appellant to the office of president of the board of trustees of the village of Martinton. At the June term, 1901, a hearing was had upon the issues made by the petition, answer and replication. The original ballots, poll-books and tally-sheets were produced, and the ballots were re-counted by the court. A decree was rendered on July 3, 1901, finding that appellee had received a majority of the legal votes cast, and declaring that he was lawfully elected to the office named. The present appeal is prosecuted by the appellant from the decree so entered by the circuit court.

The facts, which are undisputed, are substantially as follows: The village of Martinton is organized under the general law for the incorporation of cities and villages. It held its annual election for village officers on April 16, 1901. Prior to the latter date there were nominated at a caucus in the village the following persons, who were regularly certified to the clerk of said village, to-wit: Thomas McSorley as president of the board; John LeSage for treasurer; V. A. Hathway for clerk; and Henry Shannon, S. W. Peebles and A. C. Behlke as trustees for said village. There was also a petition filed with the clerk, on which the appellee was petitioned to run as president of the board. The official ballot, printed under the direction of the village clerk, was the usual form of Australian ballot and contained the names of appellant and his associates, together with the title of the respective offices for which they were candidates, in a column headed by the appellation or title of "Union Ticket." The name of appellee appears upon the ballot, as a candidate for president, in another column, headed by the words "Petition Ticket," there being no other candidates named un-

der the title of "Petition Ticket." The persons above named were the only candidates nominated by caucus or petition, whose names appear upon the ballot as originally prepared under the direction of the clerk. The following is a sample of the ballot, as originally prepared for the use of the voters, to-wit:

◯ **Union Ticket.**          ◯ **Petition Ticket.**

☐ President,          ☐ President,
THOMAS McSORLEY.          FRED SCHROEDER.

☐ Treasurer,
JOHN LeSAGE.

☐ Clerk,
V. A. HATHWAY.

☐ Trustees,
HENRY SHANNON.

☐ S. W. PEEBLES.

☐ A. C. BEHLKE.

In addition to the above, there were printed upon the said ticket, beneath the names of the candidates, the words, "Shall the property tax be paid in money?" with the words "Yes" and "No" following them, and two blank squares to the right of the words "Yes" and "No" printed under each other, for the submission of that question to the voters. The official endorsement was printed on this ticket, and it was the only ticket that was delivered by the judges to the voters to vote. It is conceded that the election was regularly held and conducted by the officers thereof, and that all the formalities of the law were observed in the preservation of the poll-books, tally-sheets and ballots. The judges of election, upon the count made

by them, found that appellant had been elected president of the board of trustees of the village. The board, upon a canvass of the returns, also found that appellant had been elected, and he thereupon qualified and assumed the duties of the office. On the day of election there was a bundle of stickers or pasters on the table where the judges sat to distribute the ballots. These stickers or pasters consisted of small yellow slips of paper with adhesive material on one side, and with the name of "Stephen Bunker" printed on the other side. Only two of these stickers or pasters were taken from the table by the voters. Such stickers as were used were pasted on the tickets in the booth by the voters themselves. There was but one election precinct in the village.

Eighty-three ballots were cast at said election. One of these ballots had a cross in the circle at the top of the column, headed "Union Ticket," in which appellant's name appeared, and also a cross in the square opposite the name of appellee in the column headed "Petition Ticket," and also three pencil-marks drawn lengthwise across the name of Thomas McSorley. The circuit court held that this ballot was not a vote for either party and should not be counted. Of the remaining eighty-two votes, forty-one were cast for Thomas McSorley, and forty-one for Fred Schroeder, as president of the board of trustees. Twenty-one ballots had a cross in the circle to the left of the words "Union Ticket" in the column, in which appellant's name appeared, and contained no other mark made by the voters. These ballots were counted for the appellant, and there is no dispute as to their having been so counted correctly. Thirty-one ballots had a cross in the circle to the left of the words "Petition Ticket" in the column, in which appellee's name appeared, and contained no other mark made by the voters. These ballots were counted for the appellee as president of the board, and it is not denied that they were so counted correctly.

Of the forty-one votes cast for McSorley twenty had yellow printed stickers, such as are above described, pasted over the name of one of the candidates for trustee as said ballots were originally printed, and containing the name of "Stephen Bunker," all of the pasters or stickers not being pasted over the name of the same candidate for trustee, but in some instances over the name of one of said original candidates for trustee, and, in the case of other ballots, over the name of some other of said original candidates for trustee. There was no cross in the square to the left of the yellow sticker so pasted over the name of one of the trustees. Besides the pasters above described, these twenty ballots had a cross in the circle to the left of the words "Union Ticket" in the column, in which the name of appellant appeared. The cross and the sticker were the only marks made by the voters, which appeared upon these ballots. Of the forty-one votes that were cast for Schroeder, ten of the ballots had a cross in the circle to the left of the words "Petition Ticket" in the column, in which appellee's name appeared, and the same kind of yellow stickers or pasters pasted on in the same way as those on the McSorley ticket, that is to say, they contained the printed name of "Stephen Bunker" pasted over the name of one of the original candidates for trustee, as said ballots were originally printed.

The circuit court did not count any of the ballots containing the yellow stickers or pasters as aforesaid. In counting the remainder of the ballots, the court held that McSorley had only received twenty-one votes and Fred Schroeder thirty-one votes at said election, and therefore declared Fred Schroeder elected, and entered a decree accordingly.

W. E. Lewis, and Morris & Hooper, for appellant.

Doyle & Crangle, for appellee.

Mr. Justice Magruder delivered the opinion of the court:

*First*—Did the circuit court err in refusing to count the ballots, on which the stickers or pasters were pasted by the voters?

Section 26 of the Ballot law of June 22, 1891, provides that, "if the voter marks more names than there are persons to be elected to an office, or if for any reason it is impossible to determine the voter's choice for any office to be filled, his ballot shall not be counted for such office. No ballot without the official endorsement shall be allowed to be deposited in the ballot-box, and none but ballots provided in accordance with the provisions of this act shall be counted." (2 Starr & Cur. Ann. Stat.— 2d ed.—p. 1690.) The ballots, upon which these stickers were pasted, were not the ballots prepared by the clerk who was authorized to prepare them. They were certainly not ballots provided in accordance with the provisions of the act of 1891. The only provision of the statute, which authorizes the use of pasters, is found in section 12 of the act. (Ibid. p. 1684). By that section "it is made the duty of the election officer, having charge of the ballots, to place the name of a candidate supplied to fill a vacancy, in certain contingencies, upon the ballot by affixing a paster, or by writing or stamping, before the ballot is delivered to the voter." (*Roberts* v. *Quest*, 173 Ill. 427). In the case at bar, there was no such vacancy as is contemplated by section 12. Even under the terms of that section, the paster can only be used "when furnished as a part of the official ballot by the proper officer, when a vacancy has happened after the ballots have been printed." (Ibid). Here, no official ballots were furnished to the voters by the proper officer with pasters upon them, but the pasters were placed upon the ballots by the voters after they entered the voting booth.

In *Fletcher* v. *Wall*, 172 Ill. 427, we held that the insertion of the names of candidates, not printed on the offi-

cial ballot, by attaching to the ballot tickets or slips of paper, on which such names are printed, is unlawful, and is not authorized by section 23 of the Election law of 1891. Section 23 provides that "on receipt of his ballot the voter shall forthwith, and without leaving the inclosed space, retire alone to one of the voting booths so provided and shall prepare his ballot by making in the appropriate margin or place a cross (X) opposite the name of the candidate of his choice for each office to be filled, or by writing in the name of the candidate of his choice in a blank space on said ticket, making a cross (X) opposite thereto." In *Sanner* v. *Patton*, 155 Ill. 553, we held that "section 23, which points out the mode or manner of voting, after the voter receives the ballot, clearly confers upon the voter the power to insert in the ballot the name or names of such person or persons as he may desire to vote for for any office to be filled at the election, and vote for such persons. * * * He may write the name of a candidate on the ballot and place a cross opposite the name, and the ballot shall be counted for such person." (Ibid. p. 562).

In the case at bar, if any voter, who placed a yellow paster over the name of one of the trustees upon the official ballot, had desired to vote for Stephen Bunker, instead of one of the trustees, whose names were thereon printed, he had, under the statute, the privilege of writing the name of "Stephen Bunker" on the ballot and placing a cross opposite the name. Such was the mode of voting for a trustee, whose name was not on the official ballot, as prescribed by the statute. We have said "that it is the duty of every voter, under this law, to ascertain and follow the provisions of the statute and the directions of the Secretary of State in his instructions sent out with the ballots, and that whenever, either through negligence or willfulness, he disregards that duty, he does so at the peril of losing his vote." (*Parker* v. *Orr*, 158 Ill. 609).

The voter has no right to substitute the pasting of a new name over the name on the official ballot for the writing of the new name thereon and the placing of a cross opposite the new name, as directed by the statute. In *Fletcher* v. *Wall, supra,* after referring to the provision of the statute requiring booths to be furnished, and "shelves, pens, pen-holders, ink, blotters and pencils" also to be furnished to enable the voter to prepare his ballot, we said: "The mere fact the methods thus provided may be less convenient than the use of pasters or stickers furnishes no sufficient reason for changing or modifying the requirement of the law, wisely designed for the purposes above mentioned. The inconvenience here would have been no greater than in any other case where the voter writes the name of a candidate on the ballot." It does not follow that, because, under the provisions of section 23, the voter may prepare his ballot by writing the name of the candidate of his choice in a blank space on the said ticket, he may also indicate his choice by pasting a printed name on the ticket. Such pasting of the name does not come within the meaning of the words, "writing in the name of the candidate of his choice in a blank space on said ticket." (*Fletcher* v. *Wall, supra*).

In *Roberts* v. *Quest, supra,* we held that, under the Election law of 1891, a voter has no authority to insert the name of the candidate of his choice on the official ballot by using a paster, on which the name of such candidate is printed; and we there said: "It is, however, plainly prescribed by the statute that the ballot, furnished by the judges to the voter, must be prepared by him individually, after he enters the booth, except in so far as he may be assisted as an illiterate voter, under the provisions of section 24, and that he shall be allowed to do so uninfluenced or in any way controlled by being electioneered or furnished with tickets or pasters by outsiders. * * * It is manifest that, if pasters may be resorted to by one candidate, they may be by all, and the

official ballot might become but little more than a convenient card upon which to paste private tickets printed and circulated in secret. The use of such tickets would revive the evils sought to be guarded against by the Ballot law."

It is claimed, however, on the part of appellant, that the rule, which thus forbids the use of pasters, merely holds that the ballot containing a paster cannot be counted for the candidate in whose favor the paster is used, that is to say, that a ballot containing a paster can not be counted for the candidate named on such paster, but that, as to other candidates upon the same ballot for whom pasters have not been used, the ballot of the voter is to be counted. In the present case, it is said that, inasmuch as the pasters were placed over the name of a candidate for trustee, and not over the name of a candidate for president of the board, the vote should not be counted as a vote for such trustee, but that the voter is entitled to have it counted as a vote for the president of the board.

The trouble with the contention of the appellant is that the sticker or paster, as used upon the ballot, made the whole ballot invalid because it was not, by reason of such pasting, such a ballot as was provided for by the law; nor was it such a ballot as was prepared by the clerk who was authorized to prepare the ballots.

We are of the opinion that the circuit court properly rejected the ballots containing the pasters as above described.

*Second*—One of the ballots, rejected by the court below and not counted, as not having been cast for either party, had a cross in the circle at the top of the column headed "Union Ticket," in which appellant's name appeared, and a cross in the square opposite the name of appellee in the column headed "Petition Ticket," and also had three lead-pencil marks, drawn lengthwise across the name of the appellant in the column headed "Union Ticket." It

is not necessary to consider the question whether the circuit court did or did not err in refusing to allow this ballot to be counted, as, without counting it, the appellee had a majority of the ballots after the rejection of all the ballots containing pasters.

For the reasons above stated, the decree of the circuit court, declaring the appellee to have been elected president of the board of trustees, was correct, and is affirmed.

*Decree affirmed.*