[Civ. No. 2608.   Third Appellate District.—April 14, 1923.]

PLEASANT GROVE UNION SCHOOL DISTRICT, Appellant, v. GEORGE ALGEO et al., Respondents.

[1] SCHOOL LAW—BOND ELECTION—MARKING OF BALLOTS—CODE PROVISIONS MANDATORY.—The provisions of sections 1883 and 1599 of the Political Code declaring the manner in which voters at school bond elections shall mark their ballots are mandatory, and voted ballots at such an election containing no cross but the word "Yes" after the words "Bonds—Yes" are invalid.

APPEAL from a judgment of the Superior Court of Sutter County. K. S. Mahon, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. H. Carlin and Arthur Coats for Appellant.

W. P. Rich and Lawrence Schilling for Respondents.

PLUMMER, J., *pro tem.*—In this action the petitioner applied to the superior court in and for the county of Sutter for a writ of mandate to compel the election officers of Cottonwood Election Precinct to count two certain ballots cast at an election held in said school district in favor of the issuance of bonds by said district. The superior court denied the writ on the ground that the two ballots were marked contrary to the manner provided for the expression of the choice of voters in school bond elections as contained

---

1. Validity and construction of the law in marking of ballots, notes, Ann. Cas. 1918A, 1131, 1160, 1165; 47 L. R. A. 726.

in section 1883 of the Political Code, wherein it is provided that persons voting at such elections shall put a cross upon their ballot with pencil or ink after the words ''Bonds-Yes'' or ''Bonds-No'' (as the case may be), to indicate whether they have voted for or against the issuance of bonds. The two ballots in question, not counted, did not contain any cross, but instead contained the word ''Yes'' after the words ''Bonds-Yes.''

Section 1883 of the Political Code, after providing that elections such as the one under consideration in this action shall be conducted in accordance with different sections of the Political Code, uses the following language: ''And except further that persons voting at such bond elections *shall* put a cross upon their ballots with pencil or ink after the words 'Bonds-Yes' or 'Bonds-No,' as the case may be, to *indicate* whether they have voted for or against the issuance of bonds.'' (The italics are ours.)

Section 1599 of the same code (as amended by Stats. 1917, p. 15), to which reference is made in section 1883, just quoted, contains the following provision relative to the manner of voting: ''In casting his vote the elector *must* stamp or write a cross in the square immediately following the name of the candidate for whom he desires to vote,'' etc.

Section 1205 of the Political Code, relating to general elections, contains the following: ''In voting he *shall* stamp a cross in the voting square after the name of every candidate for whom he intends to vote. . . . Where two or more candidates for the same office are to be elected and the voter desires to vote for candidates for that office, he *must* stamp a cross after the names of all candidates . . . for whom the voter desires to vote.'' (The italics are ours.)

It will thus be seen that the provisions of sections 1883 and 1599 of the Political Code are identical in the use of the words ''shall'' and ''must'' found in section 1205 of the Political Code, fixing the manner in which a voter is permitted to express his choice when voting at a general election. In ordinary parlance the words ''shall'' and ''must'' are compulsory in meaning, and as used in statutes are generally mandatory, although such construction is not imperative, and may be construed to mean ''may'' when no right or benefit depends upon the imperative use, or when no public or private right is lost, or when such construc-

tion is necessary to prevent the infliction of wrong or the interference with a vested right, etc. On the other hand, it appears that if public policy is in favor of the imperative meaning, the words referred to will be held mandatory.

The general trend of authorities since the adoption of the Australian ballot system of voting has been toward holding the various specifications in the code as to the manner in which a voter shall express his choice as mandatory, save and except as liberalized by subdivision 4 of section 1211 of the Political Code, relating to marks upon the ballot other than those indicating the manner in which the voter has voted, and which might possibly have been placed there for the purpose of identifying the ballot. The reason for this is apparent. As, whether the cross is made by a stamp or with a pen, the likelihood of blots and other marks being made by the folding of the ballot is so great that unless this liberal provision and interpretation were given, the likelihood of well-intentioned voters to have their ballots invalidated would be exceedingly great. No such tendency of interpretation, however, appears when it comes to the cases having to do with the manner in which the voter must indicate his choice.

The case of *Sweetser* v. *Pacheco*, 172 Cal. 137 [155 Pac. 639], thus states the law: "Under the law as it now is and has been ever since the year 1903, the only way in which a voter can indicate his intent to vote for a particular candidate is by stamping a cross in, or at least partly in, the voting square, the provisions of Section 1205 of the Political Code being mandatory in this regard. Any other method is legally ineffectual to express an intent to vote for a particular candidate, by reason of the express language of this section providing how, and how only, the intent shall be indicated. This is made manifest by what is said by this court as to the mandatory character of Section 1205 of the Political Code, in regard to the method of indicating a vote. [Here a number of cases are cited.] As that section now is, the voter who has omitted to stamp his cross in, or at least partly in, the voting square, opposite the printed name of a particular candidate, has not voted for that candidate. The case is simply one of no vote. As to ballot 'Novato 2–8,' all the crosses, including that in the voting square opposite Sweetser's name, were made with a lead

pencil. What we have already said applies also to this ballot. In view of the provisions of section 1205 of the Political Code, the intent of the voter to vote for a particular candidate whose name is printed on the ballot can be expressed only by *stamping* a cross in, or at least partly in, the voting square. Lacking such stamped cross, the ballot cannot be counted for such candidate, even though the courts may feel that the voter in fact intended so to vote. The express language of the law forbids it.''

A large number of cases are cited in the opinion just referred to, upholding the mandatory character of section 1205 of the Political Code.

It will be observed that the Sweetser case is not based upon the provisions of section 1211 of the same code, but is expressly founded upon section 1205, the language of which is identical with sections 1883 and 1599 of the same code, governing bond elections in school districts.

Subdivision 1 of section 1211 of the Political Code is unquestionably imperative in its language. It reads: ''In canvassing the votes any ballot which is not marked by the elector as provided by law shall be void,'' etc. But this section is not one upon which the Sweetser case is decided, and therefore need not be further considered in determining the validity of the two ballots in question now before this court.

The supreme court of Colorado, having before it the question of the mandatory character of a similar provision of the Colorado code, states the law in *Wiley* v. *McDowell*, 55 Colo. 236 [133 Pac. 757], in probably as clear and decisive language as is contained in the reports, to wit: '' 'The intention of the voter, as expressed upon the face of his ballot, has always been regarded as the cardinal principle controlling the count. Under a system providing for balloting like the Australian, it is necessary that certain rules be prescribed to prevent confusion and secure uniformity. By this means the intention of the voter can be ascertained.' These principles have repeatedly been recognized and followed in this jurisdiction. (*Young* v. *Simpson*, 21 Colo. 460 [52 Am. St. Rep. 254, 42 Pac. 666]; *Heiskell* v. *Landrum*, 23 Colo. 65 [46 Pac. 120]; *Rhode* v. *Steinmetz*, 25 Colo. 308 [55 Pac. 814].) It appears to be the universal rule in all states which have adopted the so-called Australian system,

as said by the supreme court of Iowa in *Whittam* v. *Zahorik*, 91 Iowa, 23 [51 Am. St. Rep. 317, 59 N. W. 57], whether a ballot should be counted does not depend solely upon the power to ascertain and declare the choice of the voter, but also upon the expression of that choice in the manner provided by the statutes. To put it in another way, as was said in *Vallier* v. *Brakke*, 7 S. D., at page 354, [64 N. W., at page 184]: 'The statute having prescribed the manner in which the elector may designate by marks upon his ballot the candidate for whom he intends to vote, and declared the effect of such marks, neither the judges of election nor the courts are authorized to go beyond those marks in order to ascertain the voter's intention.' "

The same court, in the case of *Riley* v. *Trainor*, 57 Colo. 155 [140 Pac., at page 470], quotes with approval the following: "There must be no mistaking this language. It requires that in order to designate his choice the voter must use a cross marked as the law requires." In that case crosses were not used, and the ballots were held invalid.

The attention of this court is called to the case of *Turner* v. *Wilson*, 171 Cal. 600 [154 Pac. 2]. The court, however, in that case did not hold that the manner of voting provided for by section 1205 might be dispensed with, or that the manner of voting therein indicated was not mandatory. It simply held that writing the words "Yes" and "No" after a certain proposition appearing upon the ballot then under consideration did not invalidate the ballot for other purposes, there being no other evidence of a mark for identification. Nor is the case of *Sweetser* v. *Pacheco, supra,* modified or limited in any particular by the decision of the supreme court in *Castagnetto* v. *Superior Court*, 189 Cal. 673 [209 Pac. 549]. The use of a pencil instead of a stamp in making the cross is upheld in the Castagnetto case for the reason that section 18 of the primary law of the Statutes of 1913, page 1379, providing for indicating an elector's choice by stamping the cross with a stamp is modified by the further provision that no ballot shall be rejected for a technical error not rendering it impossible to determine the voter's choice, and very carefully distinguishing that case from the holding in *Sweetser* v. *Pacheco;* there being a difference between the provisions of section 18, *supra,* of the

primary law and the provisions of the code governing elections.

In the case of *People* v. *Town of Ontario,* 128 Cal. 625 [84 Pac. 205], the form of the ballot and not the manner of voting was the question passed upon by the court. It was there held that where the statute provided that the notice of election should contain the form of the ballot as being "for annexation" or "against annexation," the submitting of a ballot reading "for annexation-yes," and, second, "for annexation-no," leaving a square opposite the word "yes" and also opposite the word "no" for the voter to stamp a cross, did not invalidate the ballot by reason of the fact of the words "yes" and "no" appearing on the ballot, or by reason of the fact that the second call in the ballot, instead of reading "against annexation" read "for annexation-no," as the statute allowed a form equivalent to that expressed in the statute. The same is true of the questions involved in the case of *People* v. *Los Angeles,* 133 Cal. 338 [65 Pac. 749]. There the ballot read first, "for annexation"; second, "against annexation," leaving a square opposite each call upon the ballot for the voter to indicate his choice, together with a direction as follows: "To vote, stamp a cross in the square opposite the proposition indicating your choice," was a sufficient compliance with the statute as to the form of the ballot.

In the case of *Murphy* v. *City of San Luis Obispo,* 119 Cal. 624 [39 L. R. A. 444, 51 Pac. 1085], a similar question of the manner of voting was before the court, and it was there held that the direction of an ordinance as to how an elector's choice should be indicated was mandatory.

If the holding in the Murphy case, *supra,* by the supreme court is correct, it would appear that the trial court was right in denying the writ of mandate herein.

[1] For the reasons hereinbefore stated, and following the authorities cited, we conclude that the provisions of sections 1883 and 1599 of the Political Code, wherein the same words are used as are found in section 1205 of the same code, and which have been held to be mandatory, must also be held mandatory on account of similarity of use, and the judgment of the trial court should be and the same is hereby affirmed.

Finch, P. J., and Burnett, J., concurred.