[Civ. No. 4706.   Second Appellate District, Division Two.—June 10, 1924.]

COVINA UNION HIGH SCHOOL DISTRICT OF LOS ANGELES COUNTY, Petitioner, v. R. F. McCLELLAN, as Chairman of the Board of Supervisors, etc., Respondent.

[1] ELECTION LAW—MANDATORY CODE SPECIFICATIONS—VOID BALLOTS. The specifications in the code as to the manner in which electors shall express their choice are mandatory; and any number of ballots marked in violation of the statute and void as affecting the decision of the question presented are not valid for the purpose of increasing the total votes cast, or for any other purpose.

[2] ID.—SCHOOL BONDS—TWO-THIRDS MAJORITY—DEFECTIVE BALLOTS. In determining whether a high school district bond election has carried by the prescribed "two-thirds" majority, defective ballots which are not entitled to be counted either for or against the bonds should not be included in determining the total number of votes cast.

(1) 20 **C. J.**, p. 154, sec. 184, p. 192, sec. 243.   (2) 20 **C. J.**, p. 192, sec. 243.

PROCEEDING in Mandamus to compel the execution of certain school bonds.   Peremptory writ issued.

The facts are stated in the opinion of the court.

Edward T. Bishop, County Counsel, and J. H. O'Connor, Assistant County Counsel, for Petitioner.

Thomas B. Reed for Respondent.

CRAIG, J.—Petitioner seeks a writ of mandate requiring the respondent as chairman of the board of supervisors of Los Angeles County to execute certain school bonds authorized by the board pursuant to an election held October 11, 1923, in Covina Union High School District, for the purpose of determining whether or not an indebtedness of two hundred

1.   See 10 **Cal. Jur.** 79.
2.   See 10 **Cal. Jur.** 78.

thousand dollars should be created and such bonds issued therefor.

The only question presented is whether or not eleven defective ballots, admittedly not entitled to be counted for or against the bonds, and which were rejected, should be included in the total number of votes cast. Fourteen hundred and ninety-three persons deposited in the boxes ballots furnished them at the election; each ballot was properly printed and bore the words "Yes" and "No," with a small square space opposite each word in which electors should "mark a cross with pencil, ink or rubber stamp after the answer they desire to give," as required by section 1745 of the Political Code. One of the rejected ballots bore a cross in each space and the other ten contained no crosses, but the word "Yes" or "No" was written in the space provided for the cross. Nine hundred and ninety-one ballots properly prepared with the cross were cast in favor of the bonded indebtedness and 491 in the negative, amounting to the total number of 1,482 ballots, after excluding the eleven votes which the respondent concedes should not be counted on either side.

Petitioner's contention is that, inasmuch as the eleven ballots in controversy could not be included among the majority, or the minority, they were ineffectual for any purpose. The respondent refused to execute the bonds upon the ground that although eleven ballots were illegal and did not express a choice either way, yet they were *cast,* and should be added to the 1,482 votes legally cast. Hence it is computed that 1,493 persons voted at the election and that 998 affirmative votes were required to constitute the necessary two-thirds of the qualified electors voting at such election, as provided by section 18, article XI, of the constitution.

Section 1745 of the Political Code provides that an election for the creation of a bonded indebtedness in a high school district shall be conducted in conformity with sections 1596 to 1601, inclusive, of that code, and that "Electors voting at such elections shall mark a cross with pencil, ink or rubber stamp, after the answer they desire to give." Section 1599 (as amended by Stats. 1917, p. 15) requires that "in casting his vote the elector must stamp or write a cross in the square space immediately following the name of the candi-

date. . . . '' Section 1883 also provides that ''persons voting at such bond elections shall put a cross (X) upon their ballots, with pencil or ink, after the words 'Bonds—Yes' or 'Bonds—No' (as the case may be) to indicate whether they have voted for or against the issuance of bonds.'' Section 1746 of the Political Code provides that ''if it appears that two-thirds of the votes cast at said election were cast in favor of issuing such bonds'' they shall be deemed to have carried.

It was expressly held by this court in *City of Inglewood* v. *Kew,* 21 Cal. App. 611 [132 Pac. 780], that ''The final deposit of a legal ballot in the box is the act of voting. It matters not that one sign the roster, take his ballot, repair to the booth and formally present to the election officers what purports to be his ballot; nevertheless, if such ballot is not expressive of any wish or preference of the voter which under the law may be considered and given effect, such person has not voted and his vote should not be counted, even in the determination of the number of persons who voted at the election.'' *People* v. *Sausalito,* 106 Cal. 500 [39 Pac. 937], held that ballots without marks to indicate the electors' wish in any particular were not votes in any sense, and should not be counted for any purpose, and in *Sweetser* v. *Pacheco,* 172 Cal. 137 [155 Pac. 639], it was said by the supreme court that a ballot not marked in complaince with the statute was simply ''no vote.'' *Murphy* v. *San Luis Obispo,* 119 Cal. 624 [39 L. R. A. 444, 51 Pac. 1085], is to the same effect.

Respondent attempts to distinguish these cases from the one at bar, in that they involve ballots rejected because of distinguishing marks, or because they were blank, or that the ballots were cast for candidates, but as we have said, section 1745 of the Political Code expressly adopts the requirements of sections 1596 to 1601, inclusive, and while the facts of the different cases may be distinguishable, yet this precise point is decided in the language quoted herein. Citation of authority is unnecessary to sustain the rule that void, as distinguished from voidable acts, are of no legal effect. [1] It follows that any number of ballots marked in violation of the statute and void as affecting the decision of the question presented would not be valid for the purpose of increasing the total, or for any other purpose. If a

void ballot be placed in the box it cannot be said that it is a "vote cast." The specifications in the code as to the manner in which electors shall express their choice are mandatory. (*Pleasant Grove Union High School Dist.* v. *Algeo,* 61 Cal. App. 660 [215 Pac. 726].) **[2]** The logical conclusion is that by the expression "two-thirds of the votes cast at such election" is meant two-thirds of those which comply with the law and are potent in expressing a choice upon the subject of the election.

The peremptory writ will issue as prayed.

Finlayson, P. J., and Works, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 7, 1924.