[L. A. No. 9011. In Bank.—July 28, 1926.]

## J. B. McFARLAND, Respondent, v. GUS SPENGLER, Appellant.

[1] Election Law—Statutory Construction—Voting for Candidate Not on Ballot — Writing in Name — Legislative Intent. — The provisions of sections 1196, 1197 and 1203 et seq., of the Political Code, relate to the voter's privilege of voting for a candidate or person whose name is not printed on the ballot and must be read together, and when so read and compared they qualify the right to vote for such a candidate or person by prescribing the method, which is by writing the name in the blank space provided for that purpose; and the use of the words "writing" and "written in" and "written" as applied to voting for a person whose name is not on the official ballot is a clear evidence of intention on the part of the legislature to exclude other methods not specifically authorized.

[2] Id.—Use of Stickers.—The laws of this state do not authorize the use by voters of printed stickers to express their choice for candidates or persons whose names do not appear upon the printed ballot.

[3] Id. — Regulation of Voting Privilege — Mandatory Statutory Provisions.—The right to express one's choice of a candidate at the polls is not unrestricted, but is subject to reasonable regulation in the interest of secrecy and uniformity of the ballot and the fairness of the vote; and where the statute has prescribed the manner in which the elector may designate by marks upon his

---

1. See 10 Cal. Jur. 80; 9 R. C. L. 1053.
3. See 10 Cal. Jur. 78; 9 R. C. L. 1046.

ballot the candidate for whom he intends to vote, and declared the effect of such marking, neither the judges of election nor the courts are authorized to go beyond those marks to ascertain the voter's intent.

[4] ID. — UNAUTHORIZED USE OF STICKERS — VALIDITY OF BALLOTS. — Assuming that printed stickers are not placed on ballots by the voters for the purpose of identifying the same, such stickers will not invalidate the whole of said ballots under the provisions of subdivision 4 of section 1211 of the Political Code, but such code section does not purport to validate an unauthorized vote shown on a valid ballot.

---

(1) 20 C. J., p. 159, n. 32, p. 160, n. 43; 36 Cyc., p. 1147, n. 28, 30. (2) 20 C. J., p. 154, n. 67, p. 155, n. 72, 74, p. 159, n. 31. (3) 20 C. J., p. 60, n. 32, p. 61, n. 43. (4) 20 C. J., p. 162, n. 85, p. 163, n. 90, p. 169, n. 46 New.

APPEAL from a judgment of the Superior Court of Kern County. T. A. Norton, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Emmons & Aldrich and Dorsey & Campbell for Appellant.

Alfred Siemon, Paul F. Garber and Claflin & Lambert for Respondent.

SHENK, J.—This is an election contest. In 1924 J. B. McFarland, the contestant and respondent, and Gus Spengler, the contestee and appellant, were rival candidates for the office of member of the board of supervisors of Kern County. At the primary election in August McFarland received the greater number of votes. By reason thereof he won and Spengler lost the right to have his name printed on the official ballot to be used at the general election in November (Stats. 1921, p. 1218). Spengler, however, continued to be a candidate for the same office at the general election. He organized and carried on what is called a "sticker" campaign. He caused slips of paper to be prepared, on one side of which his name was printed in the same sized type used in printing the names of candidates on the ballot, and on the other side of which was mucilage,

---

4.  See 10 Cal. Jur. 85.

to enable the voter to paste the slip upon the official ballot. These stickers were circulated among the electors with the request that they be used at the general election by pasting the same on the official ballot in such way that they would cover the blank space left upon the ballot to permit electors to write in the name of a person other than McFarland for whom they might desire to vote for that office. It developed as a result of the campaign that 701 sticker ballots were cast for Spengler, which, when counted with other ballots on which the name of Spengler was written in the usual way, gave Spengler a majority of ninety votes. Without counting the sticker votes McFarland received a majority. On the contest the trial court rejected the 701 sticker votes and declared McFarland elected. From a judgment to that effect Spengler has appealed. The only question for determination on the appeal is whether the use of stickers, employed as above indicated, is authorized by the laws of this state.

[1] Prior to 1891 there appears to have been no lawful authorization for *writing in* the name of a person not found upon the ballot. In that year section 1196 of the Political Code was amended so as to provide for blank spaces on the ballot, and further providing: "Nothing in this code contained shall prevent any voter from *writing* upon his ballot the name of any person for whom he desires to vote for any office and such vote shall be counted the same as if *printed* upon the ballot, and marked as voted." (Stats. 1891, p. 170.) Thereafter, other sections of the code were amended so as to conform to the same plan. In 1893 section 1197, providing the form of the ballot and the instructions to voters, was amended so as to require the ballot to contain in the instructions to voters the following: "To vote for a person not on the ballot, *write* the name of such person, under the title of the office, in the blank column" provided for that purpose (Stats. 1903, p. 147). Prior to 1919 section 1203 imposed upon the election officers the duty to see that the stamps and ink pads were in the voting booths and in condition for proper use. In 1919 that section was amended so as to provide that no "supplies or conveniences shall be furnished other than the ink pads and stamps by which a cross (X) may be made as herein provided for," and a provision was inserted that "nothing

herein contained shall prevent an elector from using a pencil for the purpose of *writing in* on the ballot the name of any candidate for whom he desires to vote" (Stats. 1919, p. 320). Section 1204, in order to prevent voters from marking their ballots contrary to law, provides that it shall be the duty of an election officer at the time the ballot is delivered to the voter to state to him, orally and distinctly, so that it may be heard by the bystanders, "that he must mark the ballot with the stamp provided by law or it will not be counted." (Stats. 1913, p. 1169.) Section 1205 provides how the voter shall prepare his ballot. It is there stated that the elector may also "vote for a candidate or person whose name is not printed on the ballot by *writing* a name for such office in the blank space left therefor," in which case the vote "shall be counted for the person whose name is so *written.*" Section 1206 also provides that boards of election shall not furnish for use in the voting booth "any other or additional means or method by which a ballot may be marked than the ink pads and rubber stamps," and contains the proviso that "nothing herein contained shall prevent an elector from using a pencil for the purpose of *writing in* on the ballot the name of any candidate for whom he desires to vote" (Stats. 1919, p. 320). Subdivision 1 of section 1211 provides that "any ballot which is not marked by the elector as provided by law shall be void," and "any name *written* upon a ballot shall be counted for such name for the office under which it is *written;* provided it is *written* in the blank space therefor, whether or not a cross (X) is stamped, or made with pen or pencil, in the voting square after the name so *written.*" In quoting from the code sections italics have been supplied.

The foregoing provisions of the Political Code relate to the same subject and must be read together (Pol. Code, sec. 4480). They relate to the voter's privilege of voting for a candidate or person whose name is not printed on the ballot, and when read together and compared they qualify the right to vote for such a candidate or person by prescribing the method, which is by *writing* the name in the blank space provided for that purpose. The use of the words "writing" and "writing in" and "written" as applied to voting for a person whose name is not on the official ballot is a clear evidence of intention on the part of the legislature

to exclude other methods not specifically authorized. It has been held and may well be said to be the general rule that "if a statute so provides, but not otherwise, the electors may use printed pasters for the insertion of names not upon the ballot instead of writing them in the space reserved for their reception." (15 Cyc. 356, and cases cited.)

[2] Whether the laws of this state authorize the use of stickers has not been directly presented or passed upon by this court, but sufficient attention has been called to the subject to indicate that if the legislature intended that stickers were to be used they should be specially authorized by statute. Section 1204 as adopted in 1872 contained the provision that if upon any ballot a name had been erased and another substituted therefor in any other manner than by the use of a lead pencil or common writing ink the sub- stituted name must be rejected. Concerning this provision the code commission said: "This section is intended to pre- vent the use of nitrate of silver, or any other chemical sub- stance which may be written over a name and not be dis- tinguishable until time brings out the impression; also to prevent the use of pasters, the use of which is subject to two objections: first, their liability to come off; second, their lia- bility to be fraudulently taken off." (Pol. Code, Annotated, 1874, 1st ed., vol. 1, p. 282.) This note of the code com- mission was favorably commented upon in *Rutledge* v. *Craw- ford,* 91 Cal. 526 [25 Am. St. Rep. 212, 13 L. R. A. 761, 27 Pac. 779]. In *Russell* v. *McDowell,* 83 Cal. 70 [23 Pac. 183], the court was considering the validity of certain bal- lots upon which the name of a candidate for sheriff had been printed without authority. In the course of the opinion the court said: "The general object of the law was, of course, to give effect to the real intention of the voter— to secure the counting of his ballot in favor of the candidates of his choice—and it contained many specific provisions to that end. But the general rule for ascertaining the inten- tion of the voter was to read his ballot as printed or written, and be guided by that. To this rule there were no excep- tions, save those expressly provided for. One of these, con- tained in section 1204 of the Political Code, related to *pasters*—a fraud of the same kind, though clumsier and more easily detected than spurious tickets. It is surprising that the legislature did not from the beginning deal with names fraudulently *printed* on tickets exactly as it dealt

with names fraudulently *pasted* on tickets." And it has been held that the provisions of section 1205 as to the manner of voting are mandatory (*Sweetser* v. *Pacheco,* 172 Cal. 137 [155 Pac. 639]).

The foregoing comment of the code commission to the effect that section 1204 was intended to prevent the use of pasters and the comments of this court in the cases above cited to the same effect have been a part of the legislative and judicial history of the state for over forty years. Such being the case, it is significant that the legislature has not so amended the election laws as to specifically authorize the use of stickers if it was intended that they should be used. In the absence of a change in the law so as to authorize them we conclude that it was never the intention of the legislature to permit that method of voting.

Appellant attempts to justify the use of stickers by reference to the rule laid down in section 18 of the Direct Primary Law that "no ballot shall be rejected for any technical error which does not render it impossible to determine the voter's choice" (Stats. 1911, p. 851). In *Castagnetto* v. *Superior Court,* 189 Cal. 673 [209 Pac. 548], relied upon by the appellant, it was held that a primary election ballot marked with a pencil cross was not invalid under said section. But special attention was called in that case to the fact that the general election law did not permit such a marking of the ballot and that the provisions of said section 1205 were mandatory. Assuming, however, that a general election ballot marked with a pencil cross would be valid, it would not follow that the pasting of a paper on the ballot would satisfy the statutory requirement that the name be *written* on the ballot by the voter. True, the intention of the voter must be ascertained, but it is not enough to find out generally the voter's intention. Such intention must be expressed in the manner prescribed by law (*People* v. *Town of Sausalito,* 106 Cal. 500 [39 Pac. 937]). When the method of expressing the voter's intention is prescribed by authority of law such method becomes a matter of substance (10 Cal. Jur. 78, and cases cited). [3] In other words, the right to express one's choice of a candidate at the polls is not unrestricted. It is subject to reasonable regulation in the interest of secrecy and uniformity of the ballot and the fairness of the vote, etc. (*Spier* v.

*Baker,* 120 Cal. 370 [41 L. R. A. 196, 52 Pac. 659].) ''It
appears to be the universal rule in all states which have
adopted the so-called Australian system, as said by the
supreme court of Iowa in *Whittam* v. *Zahorik,* 91 Iowa, 23
[51 Am. St. Rep. 317, 59 N. W. 57], 'Whether a ballot
should be counted does not depend solely upon the power
to ascertain and declare the choice of the voters but also
upon the expression of that choice in the manner provided by
the statute.' To put it in another way, as was said in
*Vallier* v. *Brakke,* 7 S. D. 354 [64 N. W. 180]: 'The statute
having prescribed the manner in which the elector may
designate by marks upon his ballot the candidate for whom
he intends to vote, and declared the effect of such marking,
neither the judges of election nor the courts are authorized
to go beyond those marks to ascertain the voter's intent.' ''
(*Pleasant Grove U. S. Dist.* v. *Algeo,* 61 Cal. App. 660 [215
Pac. 726]; see, also, *Union High School Dist.* v. *McClellan,*
67 Cal. App. 640 [228 Pac. 409].)

[4] Subdivision 4 of section 1211 provides: ''No mark
upon a ballot which is unauthorized by this act shall be
held to invalidate such ballot unless it shall appear that such
mark was placed thereon by the voter for the purpose of
identifying such ballot.'' The appellant contends that this
code provision is full justification for holding the sticker
votes valid and counting them in his favor. It may be
assumed that the stickers were not placed on the ballots by
the voters for the purpose of identifying the same. With
that assumption the stickers would not invalidate the whole
of said ballots, but the code provision does not purport to
validate an unauthorized vote shown on a valid ballot. The
objection to the ballots offered in evidence by the appellant
was that they did not disclose a valid vote for Spengler, and
the objection was sustained on that ground, and not on the
ground that said ballots were invalid in their entirety.

Appellant again seeks to justify the use of stickers by
reference to sections 16 and 17 of the Political Code, where,
in defining words and phrases, it is provided that ''writing
includes printing and typewriting.'' It is argued that as
the sticker contained printing, the pasting thereof on the
ballot is equivalent to writing the name on the ballot.
This is a *non sequitur.* The code provisions plainly require
that the impression made on the ballot by writing the name

of the candidate in the blank space shall be manually accomplished by the elector while in the voting booth.

Appellant strongly relies on the case of *Snortum v. Homme*, 106 Minn. 464 [119 N. W. 59], where it was held that the words "write" or "written" when applied to the statutory right of the voter to write other names on the ballot in the blank space under the printed names included "any mode of representing words or letters" as provided by the laws of Minnesota, and it was there decided that an elector, before going into the booth, could provide himself with and later use in marking his ballot a printed or typewritten paster or sticker. It does not appear that the laws of Minnesota contained the restrictions which are embodied in our Political Code with reference to the supplies and conveniences which may be furnished to the voters. The supreme court of Illinois, however, has reached the opposite conclusion on statutory provisions similar to our own and based on what is deemed the better reasoning (*Fletcher v. Wall*, 172 Ill. 426 [40 L. R. A. 617, 50 N. E. 230]; *McSorley v. Schroeder*, 196 Ill. 99 [63 N. E. 697]). In the latter case the court very pertinently said: "It is manifest that, if pasters may be resorted to by one candidate, they may be by all, and the official ballot might become but little more than a convenient card upon which to paste private tickets printed and circulated in secret. The use of such tickets would revive the evils sought to be guarded against by ballot law."

An examination of the authorities in other jurisdictions shows that the clear weight of authority is to the effect that if the statute so provides, but not otherwise, stickers may be used. If authorized by statute the use thereof would necessarily be accompanied by reasonable statutory regulations to guard against any abuses that might otherwise attend the exercise of the right. Since there is no such authorization in this state it follows that the trial court was correct in excluding the sticker ballots involved herein.

The judgment is affirmed.

Seawell, J., Waste, C. J., and Richards, J., concurred.

Mr. Justice Curtis, being disqualified, does not participate in the foregoing opinion.