STATE ex Rel. McCABE, Public Administrator, Relator,
v. DISTRICT COURT et al., Respondents.

(No. 7,786.)

(Submitted February 3, 1938.   Decided February 25, 1938.)

[76 Pac. (2d) 634.]

*Mr. S. P. Wilson,* for Relator, argued the cause orally.

*Messrs. Stewart, Stewart & McKnight,* for Respondents; *Mr. Sid Stewart* and *Mr. J. B. C. Knight* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an application for a writ of supervisory control to compel the district court of Deer Lodge county to annul a ruling refusing to appoint relator as special administrator in a probate matter therein pending. Relator also seeks to have directed the filing of his petition for appointment, and issuance to him of letters of special administration upon his qualifying as provided by law.

Nels Pearson died testate on or about March 17, 1936, naming his surviving wife sole legatee and executrix of his estate. She applied and qualified for letters testamentary, but later re-

signed as executrix and renounced her right to such letters in favor of one J. B. Gnose. Thereafter, on May 23, 1936, an order was duly made at the request of the widow, appointing Gnose as administrator with the will annexed. He qualified and continued to act until his death, which occurred on January 7, 1938. His death left a vacancy, and there is now no administrator or executor appointed or acting.

On January 11, 1938, relator, as public administrator, filed his petition for the issuance of letters of administration to him. Subsequently, January 13, 1938, the widow filed a request for the appointment of E. L. Kunkel as administrator, waiving any right she might have had to the appointment. Mr. Kunkel filed his petition on the same day.

On January 12, 1938, relator presented a petition for his appointment as special administrator. He therein set forth the fact that he had previously petitioned for appointment as general administrator, which petition had been set for hearing; however, in addition, he alleged on information and belief that litigation would arise as to whom letters should issue, and that there was then, and would be, delay in granting letters. In his petition he set forth certain matters with relation to parcels of real estate and items of personal property in the counties of Deer Lodge and Granite not listed in the inventories and appraisements of the estate in those counties. He alleged that in the lifetime of deceased there had been fraudulent conveyances and transactions with relation to those properties, all of which had been made for the purpose of cheating and defrauding the interests of creditors of the estate.

Relator takes the position that an emergency calling for the appointment of a special administrator has arisen by reason of the fact that these unadministered and uninventoried assets will remain uncared for and without a legal custodian pending the issuance of general letters of administration. It is his contention that title to the real estate mentioned "should be cleared and made secure to said estate, and the goods, chattels, effects of the decedent and the income, rents, issues and profits of the estate should be collected and cared for for the benefit of the

creditors and other persons interested in the estate, and unless and until an administrator is appointed, the same will be uncared for and wasted or lost.'' He further asserts that the preservation of the estate demands his appointment in preference to that of the widow, any of her children, or any next of kin, because all such persons are disqualified by reason of their adverse interests in the property and assets of the deceased.

The petition for special letters was presented and argued before the court. Objections were made to the petition, to the effect that it did not state facts sufficient to constitute grounds for the appointment of a special administrator. The court sustained these objections and refused to appoint relator as special administrator. It specifically found and declared that no special administrator was necessary. Application for this writ followed, based upon the grounds that the court's ruling was in excess of jurisdiction, arbitrarily and unlawfully made, and that relator has no other plain, speedy nor adequate remedy. Respondents filed a motion to quash, and submitted the matter on oral argument, filing no brief.

Relator relies chiefly on section 10107, Revised Codes, in support of his application, which section provides as follows: ''When there is delay in granting letters testamentary or of administration from any cause, or when such letters are granted irregularly, or no sufficient bond is filed as required, or when no application is made for such letters, or when an executor or administrator dies, or is suspended, or removed, the court or judge must appoint a special administrator to collect and take charge of the estate of the decedent in whatever county or counties the same may be found, and to exercise such other powers as may be necessary for the preservation of the estate.'' He contends that these provisions impose a positive mandate upon the district court to appoint a special administrator when there is delay in the granting of letters or when an executor or administrator dies. Both of these conditions are asserted to exist here, and of the latter there can be no doubt.

The main question involved is whether, under the terms of the statute, any discretion is vested in the district judge in the

matter of appointment of a special administrator. The question is one of first impression in this state, and our search for outside authorities has failed to disclose any decision bearing directly on the subject. This is significant, particularly in view of the fact that many other states have statutes either identical to our own or of like import, which impels the conclusion that the statute must be too plain in its meaning to admit of argument.

Before considering the statute in controversy, and the other ▓ statutes in the chapter dealing with special administrators, it becomes important to understand just what a special administrator is, and what his functions are. Bancroft's Probate Practice, volume 2, section 371, page 700, makes the following general statement: "By statute in most of the states special administrators are required to be appointed 'to collect and take charge of the estate of the decedent, in whatever county or counties the same may be found, and to exercise such other powers as may be necessary for the preservation of the estate.' A special administrator is accordingly one appointed to take temporary charge of the estate until general letters are issued, or during the suspension of a general administrator, and in like cases. He is an emergency officer, appointed, not to conduct administration, but solely to conserve the property in default of a qualified executor or general administrator. Such administrators are sometimes referred to as 'administrators *pendente lite*,' and their office and duties are very similar to those of a receiver. Like receivers they are appointed by the court to take charge under its direction of property in litigation with a view to care and preservation of such property for the parties to whom the court may ultimately determine that it belongs." To the same effect see *In re Williams' Estate*, 55 Mont. 63, 67, 173 Pac. 790, 1 A. L. R. 1639; *In re Dolenty's Estate*, 53 Mont. 33, 44, 161 Pac. 524.

Thus will be observed the very temporary and limited nature of a special administrator's functions. Sections 10107 to 10113, inclusive, likewise bear out this conclusion—particularly sections 10109 and 10112. The former provides that no appeal must be allowed from the appointment (which may be made at any

time without notice, section 10108), and the latter providing for the automatic cessation of his authority upon the appointment and qualification of an executor or administrator. (*In re Williams' Estate,* supra.)

Section 10107, interpreted literally, would seem to require imperatively of the judge that he appoint a special administrator when certain specified conditions exist. However, the concluding phrase of the section, "as may be necessary for the preservation of the estate," would seem to make it the more reasonable view that such compulsory appointment need be made only where a showing of necessity is made demanding such an appointment for the preservation of the estate, and we so hold. As observed above, he is at best only an emergency officer with very limited duties and authority. In view of the express purpose for which he is appointed, and the fact that he is primarily an officer of the court to help carry on the administration, it seems to us that a fair reading of the statute carries with it the express implication that there must appear a necessity for the appointment in the light of this purpose, before the judge is required to appoint. Otherwise, he would be obliged to create an additional, and sometimes unnecessary, burden and obligation upon the assets of an estate, viz., compensation of the appointee, when in his judgment (and he is presumed to act for the benefit of creditors and all others interested in the estate) no emergency or necessity existed for the appointment of such officer. Such a construction seems to us opposed both to the letter and spirit of the statute, and to the defeat of its purpose—preserving assets.

We are reluctant to contravene or construe away terms of a statute which in themselves are mandatory upon their face, except where the intent and purpose of the legislature are plain and unambiguous and clearly signify a contrary construction; the synonymous terms "must" and "shall," in that connection, being generally interpreted as mandatory, and the term "may" being generally construed as permissive or directory only. (59 C. J., sec. 635 (5), p. 1079 et seq.; 25 R. C. L. sec. 14, p. 766 et seq.; Endlich on the Interpretation of Stat-

utes, sec. 431, p. 607 et seq.) However, the term "may" has frequently been held by this court to mean "must." (*State ex rel. Griffin* v. *Greene*, 104 Mont. 460, 469, 67 Pac. (2d) 995, 111 A. L. R. 770; *State* v. *Flagg*, 75 Mont. 424, 427, 242 Pac. 1023; *Soliri* v. *Fasso*, 56 Mont. 400, 185 Pac. 322; *Rule* v. *Butori*, 49 Mont. 342, 344, 141 Pac. 672; *State* v. *Dotson*, 26 Mont. 305, 312, 67 Pac. 938; *First Nat. Bank* v. *Neill*, 13 Mont. 377, 382, 34 Pac. 180.) Likewise "must" has been interpreted to mean "may." (*State ex rel. Jaumotte* v. *Zimmerman*, 105 Mont. 464, 73 Pac. (2d) 548; *Chicago etc. R. R. Co.* v. *Fallon County*, 95 Mont. 568, 28 Pac. (2d) 462; *Hoppin* v. *Long*, 74 Mont. 558, 576, 241 Pac. 636; *Stackpole* v. *Hallahan*, 16 Mont. 40, 59, 40 Pac. 80, 28 L. R. A. 502.) It is only fair to note that of the latter utterances the matters sought to have declared peremptory were mostly of form not going to the essence of the thing required. In other words, the court declared that, where the requirements of the statute were given merely with regard to the proper and orderly conduct of business, a mandatory construction was not intended or required.

A few cases from other jurisdictions show that the terms "must," "shall," and "may" have been given similar interpretations, and the following cases give illustration and uniformity to the general rules: That "the word 'shall' when used by the Legislature to prescribe the action of a court is usually a grant of authority, and means 'may,' and even if it be intended to be mandatory it must be subject to the necessary limitation that a proper case has been made out for the exercise of the power." "'Shall' when used by the legislature to one acting judicially, is usually a grant of authority and means 'must.'" "Where the directions of the statute are given with a view to the proper, orderly, and prompt conduct of business merely, the provision may generally be regarded as directory." (*Fagan* v. *Robbins*, 96 Fla. 91, 117 So. 863, 866; *Becker* v. *Lebanon etc. Co.*, 188 Pa. 484, 41 Atl. 612; *Munro* v. *State*, 223 N. Y. 208, 119 N. E. 444; *Matter of Rutledge*, 162 N. Y. 31, 56 N. E. 511, 47 L. R. A. 721; *In re Supervisor of Nether Providence Township*, 215 Pa. 119, 64 Atl. 443; *Pleasant*

*Grove Union School Dist.* v. *Algeo,* 61 Cal. App. 660, 215 Pac. 726; *Hurford* v. *City of Omaha,* 4 Neb. 336, 350; *In re County Bridge,* 16 Pa. Dist. R. 236; *In re Chadbourne's Estate,* 15 Cal. App. 363, 114 Pac. 1012; *Bladen* v. *Philadelphia,* 60 Pa. 464.)

Having resolved the meaning of the statute in favor of a construction giving the district court discretion in the matter of appointment, other arguments advanced by relator with regard to who is entitled to priority become unnecessary to a determination of this application.

Relator alleges in his application and argues that the widow's right to nominate has been exhausted. There is no merit in this contention. In support of this position he cites the case of *In re Blackburn's Estate,* 48 Mont. 179, 137 Pac. 381, 384, and quotes a portion of the opinion. We have examined the case, and a careful reading thereof discloses absolute support, not for relator's position, but for the proposition that the widow may nominate, even though she has previously waived her right to administer and has already made one nomination. The fact in the instant case is that the widow's nominee died. The opinion in the case cited recognized the widow's right to "control *in limine* the administration of her late husband's estate [citing cases]. To that end she is authorized to either administer it herself, or to nominate some person in whom she places trust and confidence to administer it for her." The *Blackburn Case* held that, where waiver of the widow's right to letters had not been fairly procured or freely given, she could not be held to have exhausted her right of nomination. In view of this holding, is a widow any more to be deprived of her right to control *"in limine"* and to renominate where her first choice has been removed by death? We think not. The right to control *in limine* must certainly carry with it the continuing right to nominate, in a proper case, where necessary to such control. That the widow or her nominee might have such adverse interests to property allegedly belonging to the estate as to make either an improper person to be granted letters is of no moment here. It lies within the discretion of the trial court to appoint the party best entitled thereto. (Sec. 10078, Rev.

Codes.) If such appointee fails to do his duty either through misfeasance or nonfeasance, sections 10124 et seq. provide the method and procedure obtaining in such instance. (See Opinion on Rehearing in *Re Dolenty's Estate,* supra; *Swanberg* v. *National Surety Co.,* 86 Mont. 340, 283 Pac. 761.)

From what we have said it is plain that the district judge ▮▮ was acting within jurisdiction when he ruled on the application for the appointment of a special administrator, and it is likewise plain that there was no appeal from the ruling. But we do not believe that he acted under a mistaken view of the law, or in willful disregard of it, or that he did a gross injustice by the ruling. (See *State ex rel. Finley* v. *District Court,* 99 Mont. 200, 43 Pac. (2d) 682.) Such being the case, the writ should not issue. However, the power to appoint a special administrator being continuing and recurrent in its nature by reason of the provisions of the statute, it is possible that a contingency may at any time arise requiring such action; hence the denial of this application can have no binding effect upon the court in the future so as to control judicial discretion in the face of a proper showing of necessity for such an appointment. Such a contingency may be shown to exist in this estate at any time, and, when it does, it is the duty of the court to act in response to the necessities of the occasion.

The motion to quash is sustained and the proceeding dismissed.

ASSOCIATE JUSTICES ANDERSON and ANGSTMAN concur.

MR. JUSTICE MORRIS:

I concur in the foregoing opinion by Mr. Justice Stewart for the reason that it appears to be supported by a preponderance of authority, but I do so reluctantly.

The petitioner alleges that the deceased, just prior to his death and while his estate was in an insolvent condition, transferred valuable properties to various members of his family in derogation of the rights of creditors. The widow of the deceased is one of the transferees of such property, and, exercising her statutory right, nominated the person for administrator to whom

petitioner objects, the petitioner contending that the nominee of the widow cannot be expected to take any action to compel the widow to make restitution of the property alleged to have been illegally transferred. By the decisions cited by Mr. Justice Stewart the right to make such nomination is held to be vested in the widow of the deceased, and, out of regard for the rule of *stare decisis,* I concur in the opinion, but I seriously doubt that the legislature intended to vest the right of nomination in the widow under such circumstances as it is alleged exist here.

MR. CHIEF JUSTICE SANDS, having been absent on account of illness, did not hear the argument and takes no part in the opinion by MR. JUSTICE STEWART.